## TRAVELERS INS. CO. v. FORSON.

### No. 15527.

Court of Civil Appeals of Texas.

Fort Worth.

April 30, 1954.

Rehearing Denied May 28, 1954.

Jones, Parish & Fillmore, Clyde Fillmore, Wichita Falls, for appellant.

Brewster, Pannell, Leeton & Dean, Leo Brewster, Beale Dean, Fort Worth, for appellee.

MASSEY, Chief Justice.

From a judgment for a plaintiff for death benefits under the Texas Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., because of the death of her husband, the defendant insurer appeals.

Judgment reversed and rendered.

Lloyd William Forson was an employee of the Jack Grace Drilling Company. On October 7, 1952, he was killed while en route to his place of employment approximately seven miles from the city of Henrietta, by the most convenient route, to-wit, a public highway in Clay County, Texas. The Drilling Company's compensation insurance was carried by The Travelers Insurance Company. At the time he was killed he was a passenger in an automobile owned and driven by Leonard Henson. Leonard Henson was the driller in charge of the drilling crew, of which said de-

ceased was a member. The crew, including the driller, comprised four persons, all of whom lived in Henrietta, and each of whom owned an automobile. The driller was the only member of the crew who was directly employed by the Jack Grace Drilling Company, but he had hired all the other members of the crew as the agent for said employer. He was authorized by his employer to do this, and he was likewise authorized to fire any member of the crew should he desire to do so. He was in complete authority over the other members, subject of course to being overridden by those above him, as was the custom in the oil fields in the vicinity of Henrietta, Texas. Ordinarily no one is present during drilling operations on an oil well except the driller and his crew members.

The night of the deceased's death the driller was en route to the well with all the other members of his crew in the automobile with him. They would have relieved another drilling crew upon reaching the well site had they not been involved in the automobile collision which occurred en route, and which resulted in the deceased's untimely death. It was only by circumstance that the deceased was a passenger in Leonard Henson's automobile at time of the collision. By private arrangement of all of the crew members they "swapped out" as to transportation to the well site each night. Perhaps the previous night the deceased used his automobile and drove the others to work, as by the agreement each member would drive his own automobile every fourth night carrying the others as passengers. In this manner each would recompense the others for three nights of transportation as a passenger. No member paid any of the others any additional compensation for his transportation. The employer did not provide or pay for such transportation. The ordinary working day began for each member of the crew after the crew reached the well site and relieved the crew that worked until their arrival.

The employer furnished an ordinary water can to the crew of which the deceased was a member, and apparently each of the other crews were also furnished a water can. There was no drinking water available at the well site, and such water as was required for drinking purposes was of necessity hauled to the premises. At the end of each "day's work" it was the custom of the crew of which the deceased was a member to place the empty water can in the trunk of the automobile which had been used to come to work that day, and the empty can was transported from the well site at the end of each tour of duty to Henrietta so that it would be available the next evening for refilling with fresh water and transportation back to the well site in the trunk of the automobile of the next person driving the crew to work. By this usage and custom there was always fresh drinking water at the well site for the use of the employees of the Drilling Company. In this manner the transportation of the water was effected without any expense on the part of the employer. It goes without saying that drinking water was a necessary facility on the employer's premises, and had the transportation of it not been handled in this manner, the employer would of necessity have made some other arrangements to furnish it at that place. The employer had made arrangements at an ice house in Henrietta for ice to be furnished to each crew whenever it was desired to have ice to cool the water, and any member of the crew had only to drive by the ice house and get whatever amount of ice was desired for the purpose and the ice house operator would on such occasions charge the ice to the employer's account. Whether or not ice was obtained on the night in question is of no account for the point where the collision occurred was one by which the crew would have driven whether or not ice had been obtained. The same thing was true, whether or not water had been obtained.

The validity of the judgment for compensation benefits turns upon the question of whether or not the deceased was in the scope and course of his employment at the time he was killed (when a passenger in the automobile of Leonard Henson at the time of the collision) merely because there

was in the trunk of Leonard Henson's automobile at the time the can of drinking water which was being transported to the employer's premises for the use of himself and the other members of his crew. The deceased had actively participated in filling the can with the water, and had also participated in the physical act of placing the filled can in the trunk of the car shortly before the car was driven out of the city limits of Henrietta.

Vernon's Annotated Civil Statutes, Art. 8309, provides that an "injury" sustained in the course of employment by an employee shall not include certain injuries which are immaterial to our consideration, but shall include "all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employe while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

We do not believe that the fact that the deceased did actually participate in the filling of the water can and help place it in the trunk of the automobile before leaving Henrietta operated in a manner which would authorize a holding that at a subsequent time when the collision occurred and fatal injuries were sustained he was in the scope and course of his employment. London Guarantee & Accident Co., Ltd. v. Thetford, Tex.Com.App., 1927, 292 S.W. 857; Texas Indemnity Ins. Co. v. Clark, Tex.Com.App., 1935, 125 Tex. 96, 81 S.W. 2d 67.

■ The transportation of the water can on the particular night of the accident, which was the only act which might be said to have been connected with the employment, was an act by Leonard Henson and not by any other member of the crew, and it was out of the act of Henson in driving his automobile and transporting the deceased and the others to work, incident to which travel the water can was likewise transported, that deceased's fatal injuries were sustained. The employer certainly could not be said to have any purpose to be served in the transportation of the deceased, and since his presence was not required and his services not reasonably necessary to fill the can with water and place it in the automobile trunk, there was no causal connection between any work which might be said to have been performed at Henrietta prior to the time of the trip to the well site and the fatal injuries which were sustained. If it could be said that there was any risk entailed in the filling and loading of the water can, that risk was past. The risk or hazard to which the deceased was exposed and which did result in his death was that of the public highway over which he traveled on his way to work and was one to which all members of the public were subject. What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task. Federal Surety Co. v. Ragle, Tex.Com.App., 1931, 40 S.W. 2d 63. We do not believe that such risk or hazard was contemplated by the deceased, or by the employer, through his employing agent, in the contract of employment of the deceased. Smith v. Texas Employers' Ins. Ass'n, Tex.Com.App., 1937, 129 Tex. 573, 105 S.W.2d 192.

■ Of course, regardless of the intent and contemplation of the parties in the contract of employment, if the employee was at the time of the fatal accident actually upon some mission for the employer reasonably and necessarily incident to his duties of employment or was engaged in some duty of his employment, then his beneficiaries would be entitled to compensation. But, as we have said, if the transportation of the water can could be termed such a mission or such a duty, it was one performed by Leonard Henson and not the deceased.

■ Under the circumstances of this case it is clear that the accident resulting in the death of Lloyd William Forson was one which occurred in consequence of risk and hazard of the streets and highways to which all members of the public are alike subject, and unless there existed some element of the risk and hazard which had to

do with and originated in the work and business of the Jack Grace Drilling Company, then no compensation would be due and owing the beneficiaries of the deceased. Bozant v. Federal Underwriters Exchange, Tex.Civ.App., Galveston, 1942, 159 S.W.2d 973, error refused, w. m. In that case it appeared that the injured person was an employee who was en route home from work and obtained a ride in one of his employer's trucks driven by another employee who apparently was actually furthering the interest of the employer. The court held that injuries sustained under such circumstances by the employee who was the passenger were not compensable. It is to be noted that if there was any purpose of the employer to be served in that case pursuant to the use of the truck, it was not one served by the truck's passenger.

As the court concluded in the Bozant case, supra, it is our conclusion in the case at bar that if there was any purpose of the employer to be served by the trip on which the deceased was fatally injured from a collision involving the automobile in which he was a passenger, it was not one served by the deceased.

In support of the judgment the appellee has cited four main cases which she believes are controlling of the case at hand. These cases are: (1) Associated Indemnity Corp. v. Bush, 5 Cir., 1953, 201 F.2d 843; (2) Liberty Mut. Ins. Co. v. Nelson, 1944, 142 Tex. 370, 178 S.W.2d 514; (3) Federal Underwriters Exchange v. Lehers, Tex.Com.App., 1938, 132 Tex. 140, 120 S.W.2d 791; and (4) Hartford Accident & Indemnity Co. v. Bond, Tex.Civ.App., Eastland, 1946, 199 S.W.2d 293, error refused, n. r. e. The appellant contends none of these cases are in point because in each instance the employee's relation to his employer was analogous to the relation that Leonard Henson enjoyed on the occasion in question, to-wit, that of an affirmative actor in connection with the actual opera-

ting of a motor vehicle at the time it was involved in a collision upon a public road and resulting in injuries or death to such operator. We agree with the appellant on the point.

Indeed, we note the statement of the court made in the case of Liberty Mut. Ins. Co. v. Nelson, supra [142 Tex. 370, 178 S.W.2d 516], to the effect that " ' "What the [compensation] law intends is to protect the employee against the risk or hazard taken in order to perform the master's task." ' " It is also noted that in the case of Federal Underwriters Exchange v. Lehers, supra, the Commission of Appeals referred to the case of Smith v. Texas Employers' Ins. Ass'n, supra, and to the requisite of an exception to the general rule concerning "street risks",—that in order for the requisite to be fulfilled the contract of employment must either expressly or by implication provide that the work performed may subject the employee to risks and hazards of the streets, or that such employee must have actually been engaged in the performance of some particular duty of his employment, or been upon some substantial mission of his employment which subjects him to such perils, as was true in the case of Consolidated Underwriters v. Breedlove, Tex.Com.App., 1924, 114 Tex. 172, 265 S.W. 128.

We believe that neither requisite was fulfilled in this case and that the general rule is applicable. It could not be said that the contract of employment of the deceased provided that his work subject him to the risks and hazards of the streets, even by implication, and he was not engaged in the performance of the duty of transporting water for his employer when he was riding to work in another employee's automobile in which drinking water happened to be carried.

The judgment of the trial court is reversed, and judgment is rendered for the appellant.