Johnnie A. JANAK, Petitioner,

v.

TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Respondent.

No. A–9965.

Supreme Court of Texas.

July 8, 1964.

Rehearing Denied July 29, 1964.

Putman & Putman, Richard G. Strong, San Antonio, for petitioner.

Groce, Hebdon, Fahey & Smith, San Antonio, for respondent.

CALVERT, Chief Justice.

Suit was by Janak to recover workmen's compensation benefits. The jury answered all special issues favorably to Janak, and the trial court's judgment awarded him a recovery of benefits, in a lump sum, in keeping with the jury's verdict. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment that Janak take nothing. 374 S.W.2d 744.

We reverse the judgment of the Court of Civil Appeals and remand the cause to that Court.

Rendition of judgment against Janak by the Court of Civil Appeals was predicated on its finding that the jury's answer to Question No. 1 had no support in probative evidence. The answer is vital to Janak's right of recovery.

Question No. 1 and the Court's instruction given in connection therewith read:

"Do you find from a preponderance of the evidence that the injuries sustained by Johnnie A. Janak on October 22, 1959, were injuries sustained in the course of his employment for Field Drilling Company?

"Answer by stating 'Yes' or 'No.'

"We, the jury answer: ———

"In connection with the foregoing question you are instructed that by the term 'injuries sustained in the course of his employment' is meant injuries of every kind and character having to do with, and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere. Unless transportation is furnished as a part of the contract of employment, expressly or by implication, or is paid for by the employer, or unless the means of such transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another place, such transportation shall not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment. Travel by an employee in the furtherance of the affairs of [sic] business of his employer shall not be the basis for a claim that an injury occurring during the course of such travel in [sic] sustained in the course of employment, if said travel is also in furtherance of personal or private affairs of the employee, unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip."

The jury answered the question, "Yes."

Janak was a member of a drilling crew engaged in drilling an oil well near Ecleto. He lived at Yorktown. Five members of the crew, including Janak, who lived in Cuero and Yorktown traveled to and from the drilling site in a carpool; that is, each member of the crew owned an automobile and each fifth working day used his automobile to transport himself and the others, at his own expense, from Yorktown to the drillsite in going to work and from the drillsite to Yorktown in returning home. Janak's injuries resulted from an automobile collision which occurred while he and other members of the crew were going to the drillsite in an automobile owned and being operated by Draplia, a member of the crew.

The shortest and most convenient route to Ecleto from Yorktown was over highway 119 northwesterly to Gillett, thence over

highway 80 southerly to a point of intersection with a road leading easterly to Ecleto. On the morning of the accident the crew took a longer route. They were traveling over highway 72 southwesterly to Runge, thence over highway 81 northwesterly to Helena, thence over highway 80 northerly to its intersection with the road leading easterly to Ecleto. The accident occurred on highway 80 shortly after the crew had left Helena. A map showing the various highways and towns, the drillsite and the place of the accident is shown for clarity.

The purpose of the crew in taking the longer route to Ecleto was to pick up ice at Runge for their water. There was no water available at the drillsite, and Field Drilling Company, the employer, did not furnish ice for the water transported to the site by his employees. It was necessary, therefore, that some member of the drilling crew buy ice if the water was to be cooled. Ice could not be obtained in Yorktown at the early morning hour at which the crew had to leave in order to reach the drillsite by the time their work day was to begin. While engaged in drilling another well southwest of Yorktown, they had been buying ice at Runge where they would fill two large cans, furnished by their employer, with water and ice. From their past experience, they knew that they could obtain ice in Runge sufficiently early to permit them to pick it up and reach the new drillsite at Ecleto in time for work. On the day of the accident, Draplia started to drive on highway 119 toward Gillett, but the driller, who was in the automobile, directed him to take highway 72 to Runge to get ice.

To be entitled to compensation benefits Janak must have been in the course of his employment when he was injured; and, as stated by the Court of Civil Appeals, whether he was in the course of his employment at that time is controlled by Secs. 1 and 1b of Art. 8309, Vernon's Texas Civil Statutes, as judicially interpreted. The controlling provisions of the sections are included in the trial court's instruction accompanying Question No. 1, and they need not be set out here.

The general rule, as correctly noted by the Court of Civil Appeals, is that an injury occurring in the use of the public streets or highways in going to and returning from the place of employment is noncompensable. American General Insurance v. Coleman, 157 Tex. 377, 303 S.W.2d 370, 374. The rule is known as the "coming and going" rule. The rationale of the rule is that "in most instances such an injury is suffered as a consequence of risks and hazards to which all members of the traveling public are subject rather than risks and hazards having to do with and originating in the work or business of the em-

ployer." Texas General Indemnity Co. v. Bottom, Tex.Sup., 365 S.W.2d 350, 353. The rule has been criticized by Horovitz who states that the exceptions to the rule "are so numerous that they have swallowed the rule." 41 Nebraska Law Review 51.

Sec. 1b, Article 8309, enacted in 1957, has two parts. The first part declares injuries during travel to be in the course of employment, and therefore compensable, only when transportation is (1) furnished as a part of the contract of employment, or (2) is paid for by the employer, or (3) is under the control of the employer, or (4) when "the employee is directed in his employment to proceed from one place to another place." The second part deals with the "dual purpose" rule. It declares that injuries occurring during travel for the dual purpose of furthering the affairs or business of the employer and of furthering the employee's personal or private affairs shall not be deemed in the course of employment, and therefore compensable, "unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip."

The Court of Civil Appeals turned its holding that there is no evidence in the record to support the jury's answer to Question No. 1 on the fact that under the private arrangement between the members of the crew it was Draplia's day, not Janak's, to procure and transport the ice and water, and thus that Janak was but a passenger in Draplia's automobile and was traveling only in furtherance of his personal business of going to his place of employment. The broad question posed by that holding is whether a passenger member of a business or industrial carpool is in the course of his employment while traveling with the automobile owner-operator member whose journey is to perform a service in furtherance of the employer's business.

We meet this question squarely and answer in the affirmative.

It is a matter of common knowledge that travel in carpools has become an important economic facet of our modern society. This is particularly so among business and industrial employees and workers. By traveling in carpools they reduce their individual expenses which are job-connected and increase their wages usable for personal and family needs, thus making demands on the employer for increased wages less urgent. If on a particular trip the automobile-operator member of the carpool must perform a service in furtherance of the employer's business, the others must go also or abandon the carpool. To expect them to abandon the carpool if the deviation is not extreme is utterly unrealistic; and it is also unrealistic, therefore, to draw an imaginary line between the crew member who operates the automobile and the crew member who is but a passenger and say that the one is entitled to compensation benefits if injured but the other is not. One may imagine a situation in a case such as this in which the employer requested the automobile-operator crew member to perform a mission on the trip home requiring a deviation from the regular route of travel. If the other carpool crew members declined to travel with the operator they would be left stranded in a rural area some thirty-five or more miles from home.

From the standpoint of the employer in this case the obligation to procure and transport ice and water was the obligation of all of the crew members each day, and the private arrangement between the members by which one assumed primary responsibility for discharging the obligation on a particular day does not alter that fact. If the one assuming primary responsibility on a particular day had failed to discharge the responsibility, necessity for its discharge would have required another to step into the breach. We thus conclude that there is no sound basis in law for holding that Draplia was in the course of his employment on the occasion in question but Janak was not.

In support of its holding the Court of Civil Appeals cited Travelers Insurance Company v. Forson, Tex.Civ.App., 268 S.W.2d 219, writ refused, no reversible error. It is to be noted that when we refused writ of error in that case our notation indicated our view that the application presented no error requiring reversal but that we were not satisfied that the opinion of the Court of Civil Appeals in all respects "correctly declared the law" of the case. Rule 483, Texas Rules of Civil Procedure.

The basic facts in Forson are identical with the facts in this case with one important exception. In Forson the members of the drilling crew were traveling over their regular route between their home town base and their place of employment when the injury to the passenger crew-member occurred. Recovery of benefits was denied by the Court of Civil Appeals for the same reason that benefits have been denied in the instant case—because it was not the injured employee's day to procure and transport the ice and water, and the injured employee was only a passenger in the automobile of the crew member who had procured the ice and water and in whose automobile it was being transported. The proper reason for denying recovery in that case was that none of the members of the crew—not even the owner-operator of the automobile who had procured and was transporting the ice and water—was in the course of employment within sound limitations of the "dual purpose" rule. We make this statement with due respect for a decision to the contrary by the United States Court of Appeals for the Fifth Circuit in Associated Indemnity Corp. v. Bush, 201 F.2d 843. In that case the Court held that a crew member of a drilling carpool who was on his way to pick up ice for transportation to his place of work was in the course of his employment when injured in an automobile accident even though traveling on a direct route to his place of work.

The generally accepted test to be used in applying the "dual purpose" rule is found in the opinion of Chief Judge Cardozo in Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, in this language:

"The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. [Case cited.] If, however, the work has no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."

Judged by that test, there was no sound basis for saying that any member of the drilling crew carpools in Forson and Bush was in the course of his employment at the time of the automobile accidents.

In Marks v. Gray, Chief Judge Cardozo was writing in a frame of facts involving an out-of-town personal trip during which the employee agreed to perform a minor service for the employer. Application of the test is simpler when a special mission type of journey is involved; but Larson states that whether "coming and going" trips are personal or are in the course of employment "is determined by the same principles that apply to out-of-town trips under Marks v. Gray." Larson's Workmen's Compensation Law, Vol. 1, p. 244, § 18.13. Larson suggests, however, that the test announced in Marks v. Gray needs amplification, and puts his amplification in these words:

"One detail must be stressed to make this rule complete: it is not necessary, under this formula, that, on failure of the personal motive, the business trip would have been taken *by this particular employee at this particular time*. It is enough that someone sometime would have had to take the trip to carry out the business mission. Perhaps another employee would have done it; perhaps another time would have been

chosen; but if the trip would ultimately have had to be made, and if the employer got this necessary item of travel accomplished by combining it with this employee's personal trip, it is accurate to say that it was a concurrent cause of the trip, rather than an incidental appendage or afterthought.

"Once this test is satisfied, there is no occasion to weigh the business and personal motives to determine which is dominant. * * * "

Although expressly approved elsewhere, see Brown v. Arapahoe Drilling Company, 70 N.M. 99, 370 P.2d 816, the Larson amplification seems not to have been authoritatively adopted and applied in Texas to "coming and going" travel. We do not regard Knipe v. Texas Employers Ins. Assn., Tex.Civ.App., 234 S.W.2d 274, affirmed 150 Tex. 313, 239 S.W.2d 1006, as adopting it. The employee in that case was injured while en route from his place of work to the town of his residence, but he was traveling on company time, for which he was being paid, to perform a special mission before going home. Jones v. Texas Indemnity Co., (1949), Tex.Civ.App., 223 S.W.2d 286, writ refused, may also be explained on its peculiar facts. Indeed, the Larson amplification seems to have been rejected in Insurors Indemnity & Ins. Co. v. Lankford, Tex.Civ.App., 150 S.W.2d 288, no writ, and to have been expressly rejected by the Legislature in the second part of Section 1b, Art. 8309. The language in Section 1b requires an evaluation of the personal and business purposes of a dual purpose trip in determining whether an injury to the particular employee making the particular trip occurs in the course of employment. It follows from the views stated here that what was said in the opinion in Forson was not necessarily approved by this Court as the proper reason for the judgment denying a recovery of benefits.

■ Having thus concluded that Janak is not precluded from a recovery by the mere fact that he was a passenger member of the carpool at the time of his injury and that his rights are the same as the rights of Draplia, we must yet determine whether under Section 1b there is any basis in the evidence for saying that the travel to the place of injury was in the course of his employment. Inasmuch as the transportation was not furnished or paid for by the employer and was not under its control, the question resolves itself to a determination as to whether Draplia was "directed in his employment to proceed from one place to another place."

We need not rest our answer to the question on the express direction given by the driller to Draplia to go from Yorktown to Runge. In Jecker v. Western Alliance Insurance Co., Tex.Sup., 369 S.W.2d 776, we held that the *direction* "to proceed from one place to another place," of which Section 1b speaks, can be an implied direction. But by the very language of the section the implied direction to the employee must be "in his employment," and the travel thus must be in furtherance of the business of the employer. We cannot imply a direction to proceed from one place to another when the travel is for reasons or purposes purely personal to the employee. In Jecker we held that there was evidence to support the jury's finding that the travel was in furtherance of the employer's business. The question here is a much closer one.

The injury to Janak did not occur on the regular coming-and-going route of travel; it occurred during a deviation from that route and before the crew had returned to it. There is in the record adequate evidence that the crew would not have deviated from the route through Gillett if it had not been necessary to go to Runge to obtain ice. As a matter of fact, testimony of the crew members to that effect is undisputed. So the question narrows once again: Was the travel during the deviation for a purpose in furtherance of the employer's business? We hold that there is evidence in the record to support the jury's finding that it was.

The record reflects that it is customary in the drilling business for drilling crews to obtain and transport both ice and water when none is available at a drillsite; and the custom is not dependent on whether the employer or one of the employees pays for the ice. In this case the "toolpusher," the boss of drilling operations, knew that the crew must procure ice if they were to have any for their water. The record shows that the work of a drilling crew requires hard physical labor and that the October weather was warm. Although there is some dispute in the evidence as to whether the employer in this case was to reimburse crew members for any sums paid for ice, the record is clear that it is customary for a drilling contractor to pay. On the basis of these facts we think the jury was justified in concluding that ice for the water to be drunk by the employees was reasonably essential to continuation of the drilling operations, and thus that the deviation to obtain it was impliedly directed by the employer.

If the deviation to Runge had been for the purpose of picking up tools essential to the drilling operation, the travel would clearly be impliedly directed by the employer. On the other hand, if the deviation to Runge had been for the purpose of permitting one or more of the crew members to buy a particular kind of hamburger for lunch, the travel would just as clearly not be impliedly directed by the employer. The deviation to obtain ice falls somewhere in between. Ice for the water was perhaps not absolutely essential to continuation of the drilling operation, but it is sound to say that it was reasonably essential to a satisfactory continuation thereof. The necessity for the deviation may be compared to the necessity in the "personal comfort" cases in which an employee turns aside from his on-the-job work to get a drink, get warm, get fresh air or go to a restroom. As to these cases, Larson states that "the wants ministered to are so obviously in the category of necessities that no question arises about their being basically in the

course of employment"; and that "The only issue on which compensation is sometimes denied is that of seeking these facilities in an unreasonable manner." See Larson, supra, § 21.50. In refusing writ of error in Southern Surety Co. v. Shook, Tex.Civ.App., 44 S.W.2d 425, we approved this language found at page 427 of the opinion: "When a man is employed to work at any job, the fact that he is human, with ordinary human habits and requirements, is necessarily taken into consideration." The fact that it is customary in the drilling business for the employer to pay for ice is evidence that in hot or warm weather ice in the drinking water is reasonably necessary to furtherance of the business.

█ In addition to the "no evidence" point, the Court of Civil Appeals had before it a point of error asserting that the jury's answer to Question No. 1 was so contrary to the overwhelming preponderance of the evidence as to be manifestly wrong and unjust. The Court appears to have sustained that point also. It is obvious, however, that it did so under a misconception of the law applicable to the facts in the case. In that situation it is our practice to remand the case to the Court of Civil Appeals for further consideration of the point under the proper rule of law, rather than to the trial court for retrial. Porter v. Puryear, 153 Tex. 82, 262 S.W. 2d 933, 264 S.W.2d 689; Hale v. Texas Employers Ins. Assn., 150 Tex. 215, 239 S.W.2d 608, 617–618.

The judgment of the Court of Civil Appeals is reversed and the cause is remanded to that Court for further consideration.

GRIFFIN, J., dissenting.

The majority opinion wholly disregards the express statutory language of Article 8309, Sec. 1b, Vernon's Annotated Civil Statutes. This was added by the Legislature in 1957 to cover just such situations as we have here, and expresses the legis-

lative intent that employees in Janak's situation should not be held to have sustained an injury in the course of their employment.

I therefore respectfully dissent.