**NORTH RIVER INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**Ethel G. CORBELL, a widow and Michael Kent Corbell, a minor, Defendants-Appellees.**

**No. 27399.**

United States Court of Appeals, Fifth Circuit.

Jan. 28, 1970.

Cecil Kuhne, Crenshaw, Dupree & Milam, Lubbock, Tex., for appellant and cross-defendant.

Clifford W. Brown, Gene S. Cobb, Wagonseller & Cobb, Lubbock, Tex., for appellees and cross-plaintiffs.

Before THORNBERRY, GODBOLD and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

This case involves a claim for death benefits made by a widow and minor child under the Workmen's Compensation Act of the State of Texas. The Texas Industrial Accident Board entered its award against North River Insurance Company, which had the workman's compensation coverage on the deceased employee's employer, Jack Goodman, d/b/a G & G Construction Company. The insurance company filed this suit in the United States District Court for the Northern District of Texas as an appeal from the Board's award; the widow and minor child, appellees here, filed a cross-action. The jury returned a verdict favorable to appellees. The insurance company, appellant here, moved for directed verdict, for judgment notwithstanding the verdict, and for new trial. The district court denied all three motions, and the insurance company appeals those decisions.

Cody Corbell, the deceased employee, died as the result of the crash of a plane owned and operated by his employer, Jack Goodman, d/b/a G & G Construction Company. Goodman and a third passenger also died as a result of the crash. All three men were active members of the Sunset Church of Christ in Lubbock, Texas, and all three were to attend a missionary conference in Detroit, Michigan. The evidence concerning the fatal flight shows that the plane left Lubbock, Texas on August 27, 1966; that it landed in Springfield, Illinois on Saturday evening, August 27; and that it left Springfield late that same night, giving its destination as Detroit and requesting weather information for the Chicago and Detroit areas. There was testimony that the plane may have stopped in Sikeston, Missouri or Princeton, Illinois or both places. The plane crashed in Lake Michigan, presumably on August 27 or August 28, 1966.

The issue for decision is whether there was substantial evidence to support the jury finding that the deceased employee's injuries were sustained by the deceased in the course of his employment. Under the mandate of Boeing Company v. Shipman, 5th Cir. 1969, 411 F.2d 365, a motion for directed verdict or for judgment notwithstanding verdict should not be granted unless, looking at all the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion, the "facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." If there is substantial evidence opposed to the motions, that is, "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions," the motions should be denied. It should be remembered that it is "the function of the jury as the traditional finder of the facts * * * to weigh conflicting evidence and inferences, and determine the credibility of witnesses." Cognizant of these standards, we move to a consideration of the applicable Texas law and the evidence presented in the trial court.

The second part of Vernon's Ann.Civ. St., article 8309, section 1b [1] deals with

---

1. The relevant part of V.A.C.S., Art. 8309 § 1b reads as folows:

Travel by an employee in the further-ance of the affairs or business of his

the "dual purpose" rule. It declares that injuries sustained by an employee during travel for the dual purpose of furthering the affairs or business of the employer and of furthering the employee's personal or private affairs shall not be deemed in the "course of employment," and therefore compensable, "unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip." See Janak v. Texas Employer's Insurance Association, Tex.1964, 381 S.W.2d 176, 179.

Appellant claims that at the time of the fatal crash, the plane was en route from Springfield, Illinois to Detroit, Michigan and Goodman's and Corbell's only purpose in going to Detroit was to attend a meeting concerning the missionary work of their church, and that this was a purely personal and private affair of both Goodman and Corbell. Appellant does not argue that the trip as a whole would not have been made even had there been no private affairs of Corbell to be furthered by the trip, nor that the trip would have been made had there been no affairs or business of Goodman to be furthered. Appellant merely submits that there is insufficient evidence that Goodman or Corbell had any business of the construction company to transact *in Detroit,* and their only purpose in going to Detroit was on personal and private business for the Sunset Church of Christ.

Goodman's construction business was based largely on construction of church buildings, and it is doubtful that a distinction could be drawn between Goodman's church activities and his construction business since active participation in church activities enabled Goodman to cultivate prospects for his church construction business. There was testimony that Goodman was actively engaged in public relations and "did business everywhere he went." A friend of Goodman's testified that whenever Goodman "had occasion to go anywhere he would look at buildings, and I guess look for prospects."

Corbell, too, was said to have been involved in public relations and the procurement of new business. Corbell apparently was a "man Friday" to Goodman, and was always subject to the calls and commands of Goodman. Corbell would make frequent trips with Goodman, and would assist him in the handling, fueling, maintenance and piloting of the plane. On other flights made for the dual purpose of handling construction business and church affairs, Goodman's employees were always paid full wages and expenses by G & G Construction Company. In making trips in connection with his construction business, Goodman would frequently haul a passenger or perform some service for his church.

At the church meeting where it was decided that Goodman, Corbell and one other man would attend the conference in Detroit, Goodman remarked that he "didn't really want to go, but if I can go and tend to my business, I will take the plane and take a load up there if they want me to go." He also told Corbell at that meeting: "Now, Cody, you make all the arrangements and we will go and tend to business." At the time of the fatal flight, there were plans and specifications on a construction job in Sikeston, Missouri that needed to be signed. Goodman's bookkeeper testified that she conversed with Corbell on

employer shall not be the basis for a claim that an injury occurring during the course of such travel is sustained in the course of employment, if said travel is also in furtherance of personal or private affairs of the employee, unless the trip to the place of occurrence

of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or busines of the employer to be furthered by said trip.

the morning the flight started, and he told her that he wanted to get the Sikeston contract signed "over the weekend on this trip." Also, Goodman's secretary testified that one of the purposes of the plane trip was to go to Princeton, Illinois in connection with a prospective job. On the morning that the flight started, Goodman indicated that "he didn't really want to make this trip and that the only reason he did consider making the trip was because he had business to take care of in Missouri, Illinois and Michigan."

The evidence just outlined indicates that the tragic plane trip had a dual purpose: First, Goodman and Corbell would attend a conference on behalf of their church, and secondly, they would attend to certain affairs concerning Goodman's construction business. Appellant argues that even if it is conceded that the trip as a whole had a dual business and personal purpose, the *only* purpose Corbell had in going to *Detroit* was to represent his church at a conference, a purely personal matter. If this is true, submits appellant, then appellees cannot recover because the trip to the place of occurrence of the crash would have been made even if there had been no affairs or business of Goodman to be furthered by the trip.

This position is untenable for two reasons: First, the evidence indicates that Goodman essentially ordered Corbell on the trip and that it was practically impossible to separate Goodman's church activities from his construction business, and thus reasonable minds might conclude that the Detroit leg of the journey was in furtherance of the business affairs of Goodman. *See* Constitution Indemnity Company v. Shytles, 5th Cir. 1931, 47 F.2d 441; *cf.* Employers Mutual Liability Insurance Company of Wis. v. Sanderfer, 382 S.W.2d 144 (Tex.Civ. App., 1964—writ ref'd n. r. e.); Trav-

elers Insurance Company v. Mulliken, 241 S.W.2d 175 (Tex.Civ.App.1951—writ ref'd n. r. e.). Secondly, the evidence establishes that Corbell was at the beck and call of Goodman, and that Goodman expected Corbell to accompany him on this trip so they would attend to business in Missouri, Illinois, and, perhaps, Michigan. Goodman was present and in control of the airplane at all times on this trip, and Corbell could reasonably expect return transportation to Lubbock. It was neither practical nor necessary *that he abandon the plane as a means of* his return transportation and somehow make his way back to Lubbock. *Cf.* Texas Employer's Insurance Association v. Chitwood, 199 S.W.2d 806 (Tex.Civ. App.1946—no writ).

In sum, it is clear from the evidence and the applicable Texas law that the trip as a whole was made to further the business affairs of Goodman. It is less clear, however, that the trip to Detroit would have been made even if there had been no personal or private affairs of Corbell to be furthered by the trip or that the trip would not have been made had there been no affairs or business of Goodman to be furthered by the trip. What is clear is that there was evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, and thus the issues were proper for jury submission and appellant's motions for instructed verdict and judgment notwithstanding verdict were properly denied.

From what we have said thus far, it is readily discernible that the district judge did not abuse his discretion in denying appellant's motion for new trial, and his decision on that motion is affirmed.

Affirmed.