# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00312-CV

### Texas Property and Casualty Insurance Guaranty Association for Petrosurance Casualty Company, Impaired Insurer, Appellant

**v.**

### Randy Brooks, Appellee

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-03-001030, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## C O N C U R R I N G  A N D  D I S S E N T I N G  O P I N I O N

In this workers' compensation case, the majority misapplies the standard of review and creates a fact issue where none exists. The undisputed facts show that appellee Randy Brooks was paid $50 per day by his employer, Patterson Drilling Company, to transport his drilling crew to and from work, thereby excepting his travel home from the "coming and going" rule and rendering his injury in an automobile accident compensable under the statute. *See* Tex. Lab. Code Ann. § 401.011(12)(A) (West 2006). Because the majority concludes otherwise, I respectfully dissent.[1]

Patterson employed Brooks as an oil rig driller, and he was injured in an automobile accident while transporting himself and his crew from the well site, located in a remote area near Garden City, to their homes in Odessa, fifty-two miles away. Brooks testified that he and his crew

---

[1] I concur in the majority's conclusion that the summary judgment was not void under section 410.258 of the labor code.

generally worked seven days a week from 11:00 p.m. to 7:00 a.m. and that he would only get a day off when the well was finished and Patterson would move the oil rig from one drilling site to another, sometimes as frequently as every five or six days. Brooks testified that, once Patterson moved the oil rig to a new drilling site, he would have to drive himself and his crew members to the new location. According to Brooks, he would pick up his crew members in Odessa each evening and transport them to the drilling site for work and then transport them home afterwards. Brooks further testified that, on the day before the accident, Patterson called him and instructed him to return to work after two days off because the rig had been moved and would be running again the next day.

The evidence showed that Patterson paid Brooks an hourly wage, plus a $50 per diem to cover expenses. The crux of the dispute was whether the $50 per diem was for travel reimbursement. The evidence showed that, prior to hiring Brooks, Patterson reimbursed its drillers for mileage traveled to and from work. Patterson stopped its practice of mileage reimbursement in favor of a $50 per day payment to each of its employees. Patterson's witnesses testified that this $50 payment was for "expenses." Brooks testified that he understood the $50 payment to be "[d]riving pay, driver reimbursement." Brooks explained that his former employer Key Energy paid him $35 as "driver reimbursement" and that when he was hired by Patterson, his hiring supervisor, Ron Simonds, told him, "Drillers make $17.00 an hour, [and] you get $50.00 a day driving, [to] bring your crew to the work site." Brooks also stated that he would not have taken the job if Patterson had not agreed to pay for the expense of driving his crew.

According to Mark Cullifer, Patterson's Vice President of Operations, "It was the driller's [responsibility] to make sure he has a full crew." Cullifer testified that if a driller

2

continually showed up at the drilling site without a full crew "[h]e'd probably be replaced." Cullifer also testified that it was general industry practice in the region where Brooks worked for the driller to transport his crew to and from the oil rig. The evidence also showed that Patterson paid the $50 per diem only to drillers; it did not give this per diem to the driller's crew members. According to Patterson, it was paying the $50 per diem to drillers "because it's competitive out there" and "we were losing drillers to our competition." Cullifer testified that Patterson did not want to raise wages because "when we raise wages, it costs us a lot of money in other ways." The evidence also showed that Patterson made no deduction for social security or withholding taxes from the $50 per diem paid to Brooks and the other drillers.

Presented with these facts, the district court rendered judgment for Brooks after both parties filed cross-motions for summary judgment. The majority correctly states that we review the district court's grant of summary judgment de novo, *see Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005), and that when both parties file motions for summary judgment, we review the summary judgment evidence presented by both sides, determine all questions presented and render the judgment the trial court should have rendered, *see SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005). But, in light of the undisputed facts, the majority misapplies this standard of review.

The question before us is whether Brooks's injury in an automobile accident on the way home from work occurred within the course and scope of his employment with Patterson. If so, then it is a compensable injury, and he is entitled to receive workers' compensation benefits. *See Deatherage v. International Ins. Co.*, 615 S.W.2d 181, 182 (Tex. 1981) (workers' compensation

3

benefits recoverable only where death or injury in question occurs within course and scope of employee's employment). If, however, the injury did not occur within the course and scope of Brooks's employment, then he is not entitled to receive benefits. *See id.* The labor code defines "course and scope of employment" to include "an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer." Tex. Lab. Code Ann. § 401.011(12) (West 2006). The term includes activities conducted on the premises of the employer or at other locations. *Id*. Work that is directed or authorized by the employer is within the course of employment regardless of whether the work benefits the employer's business. *Burkett v. Welborn*, 42 S.W.3d 282, 287-88 (Tex. App.—Texarkana 2001, no pet.). An injury "arises out of" employment if the injury would not have occurred if the conditions and obligations of employment had not placed the claimant in harm's way. *Tex. Workers' Comp. Ins. Fund v. Simon*, 980 S.W.2d 730, 735-36 (Tex. App.—San Antonio 1998, no pet.).

As a general rule, an employee is not within the course and scope of his employment when he is injured going to and coming from work. Tex. Lab. Code Ann. § 401.011(12)(A); *see*, *e.g.*, *Evans v. Illinois Employers Ins.*, 790 S.W.2d 302, 304 (Tex. 1990); *Texas Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350, 353 (Tex. 1963). The rationale for this rule is that such injuries do not arise out of a person's employment, but are suffered as a consequence of the risk to which all traveling persons are exposed. *Evans*, 790 S.W.2d at 304. The supreme court has long held, however, that the general rule is not applicable and that an employee is acting within the course and scope of his employment when he is going to or returning from work in cases where the employer

4

furnishes the transportation as a part of the contract of employment. *See Texas Employers Ins. Ass'n v. Inge*, 208 S.W.2d 867, 868-69 (Tex. 1948); *see also* Tex. Lab. Code Ann. § 401.011(12)(A)(i). The key issue in determining whether compensation is available for an injury incurred while traveling to or from work under this exception is whether the employer's furnishing or paying for the transportation was an integral part of the employment contract or merely an accommodation to the employee. In the former case, the injury is within the course of employment and is compensable; in the latter, it is not. *See Rose v. Odiorne*, 795 S.W.2d 210, 214-15 (Tex. App.—Austin 1990, writ denied) (oil rig employee entitled to compensation if employer's transportation plan (1) was essential for transporting employees to remote job site, (2) benefitted employer, and (3) was needed to operate rig).

The facts of *Texas Employers Insurance Association v. Inge* are remarkably similar to the case before us. *See Inge*, 208 S.W.2d at 868. Inge was employed as an oil field "roughneck" and received an hourly wage, plus a travel remittance of seven cents per mile to cover the expenses of operating his automobile. *Id.* Under this arrangement, Inge went to work and used his own vehicle to transport himself and his fellow workers to and from the well site. *Id.* Inge received no wages for the time consumed traveling to and from work, and his employer made no deductions from the mileage reimbursement for social security or withholding taxes. *Id.* After completing his regular work shift at the well site, Inge started driving to his home in his own automobile, accompanied by two other members of his drilling crew. *Id.* While driving home, Inge's car collided with another vehicle, and Inge died as a result of the injuries he suffered. *Id.*

5

On these facts, the supreme court held as a matter of law that Inge was acting within the course and scope of his employment because his employer furnished the transportation as part of Inge's contract of employment. *Id.* at 869. The court explained that the location of the drilling site in an uninhabited area made it essential that Inge's employer furnish transportation in order to induce his employees to work on the job. *Id.* The hallmark of the arrangement between Inge and his employer was that the members of the drilling crew were being transported to the well site free of cost to them. *Id.* The court concluded that this transportation was an important part of their contract of employment and that the employer's affairs and business were being furthered by the transportation of crew members to and from the well site in Inge's automobile. *Id.*

The undisputed facts are no different here. The evidence showed that the drilling site was located in a remote area near Garden City that made it essential for Patterson to furnish transportation to its employees in order to induce them to work on this job. The substance of Brooks's employment arrangement required him to transport his crew to and from the drilling site or face the possibility of being replaced himself. The $50 per diem paid by Patterson to Brooks was to cover his expenses. Brooks testified that his previous employer paid $35 per day in "drivers' pay" and that he would not have taken the job with Patterson without receiving similar reimbursement. This testimony was undisputed, and Patterson admitted that it was required to pay the $50 per diem to remain competitive with other industry employers. Without the $50 per diem, Cullifer testified that Patterson would lose drillers to the competition. Regardless of the name used by Patterson to refer to the $50 per diem, Patterson's own witness, Ronald Simonds, averred that he "may have" told Brooks that it was "drivers' pay." Like the employer in *Inge*, Patterson did not deduct taxes from

6

the $50 per diem it paid to Brooks. The undisputed evidence further showed that, like Inge, Brooks was not in the business of carrying passengers for hire and that transporting himself and his crew members to and from the drilling site was merely part of his job as a driller working for Patterson. Because the undisputed evidence showed that Patterson paid the $50 per diem to transport Brooks and his crew members to the drilling site, I would affirm the trial court's judgment that Brooks was acting within the course and scope of his employment when he was injured.

In addition, I observe that another exception to the "coming and going" rule is likewise applicable to the undisputed facts in this case. Subsection 401.011(12)(A) of the labor code also excepts from the general rule transportation to and from the place of employment where the employer directs the employee in his employment to proceed from one place to another place. *See* Tex. Lab. Code Ann. § 401.011(12)(A)(iii).

In *Janak v. Texas Employers Insurance Association*, the supreme court considered whether an employer's direction "to proceed from one place to another" must be express. 381 S.W.2d 176, 181 (Tex. 1964). Relying on *Jecker v. Western Alliance Insurance Company*, 369 S.W.2d 776 (Tex. 1963), the supreme court held that the employer's direction can be implied, but the implied direction must be within the employment and the travel must be in furtherance of the business of the employer. *See Janak*, 381 S.W.2d at 181.

The undisputed evidence in this case satisfies the exception as interpreted by the supreme court in *Janak*. Brooks testified that, on the day before the accident, Patterson called him and told him to return to work the next day because the rig had been moved and would be running again. This testimony was undisputed. The evidence was likewise undisputed that the drilling

7

sites were located in remote areas; that Patterson moved the oil rig from one drilling site to the next, sometimes as frequently as every five or six days; and that Patterson required Brooks to transport his crew members to and from the drilling site or face the risk of being "replaced." As in *Janak*, benefits flowed to Patterson from the arrangement or plan of paying a $50 per diem to Brooks and making it Brooks's duty to get the crew to the job site. *See id.* at 181-82; *see also Liberty Mut. Ins. Co. v. Chestnut*, 539 S.W.2d 924, 928 (Tex. App.—El Paso 1976, writ ref'd n.r.e.). From this evidence, the trial court could have properly found that Patterson "directed [Brooks] . . . to proceed from one place to another place" within the meaning of section 401.011(A)(12)(iii) and that Brooks was therefore acting within the course and scope of his employment. *See Janak*, 381 S.W.2d at 181.

Because the majority misapplies the standard of review and creates a fact issue where none exists, I respectfully dissent.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Filed: August 8, 2008

8