TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00312-CV






Texas Property and Casualty Insurance Guaranty Association for

Petrosurance Casualty Company, Impaired Insurer, Appellant


v.


Randy Brooks, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT

NO. D-1-GN-03-001030, HONORABLE DARLENE BYRNE, JUDGE PRESIDING





C O N C U R R I N G A N D D I S S E N T I N G O P I N I O N


 In this workers' compensation case, the majority misapplies the standard of review
and creates a fact issue where none exists. The undisputed facts show that appellee Randy Brooks
was paid $50 per day by his employer, Patterson Drilling Company, to transport his drilling crew to
and from work, thereby excepting his travel home from the "coming and going" rule and rendering
his injury in an automobile accident compensable under the statute. See Tex. Lab. Code Ann.
§ 401.011(12)(A) (West 2006). Because the majority concludes otherwise, I respectfully dissent. (1)

 Patterson employed Brooks as an oil rig driller, and he was injured in an automobile
accident while transporting himself and his crew from the well site, located in a remote area near
Garden City, to their homes in Odessa, fifty-two miles away. Brooks testified that he and his crew
generally worked seven days a week from 11:00 p.m. to 7:00 a.m. and that he would only get a day
off when the well was finished and Patterson would move the oil rig from one drilling site to another,
sometimes as frequently as every five or six days. Brooks testified that, once Patterson moved the
oil rig to a new drilling site, he would have to drive himself and his crew members to the new
location. According to Brooks, he would pick up his crew members in Odessa each evening and
transport them to the drilling site for work and then transport them home afterwards. Brooks further
testified that, on the day before the accident, Patterson called him and instructed him to return to
work after two days off because the rig had been moved and would be running again the next day.

 The evidence showed that Patterson paid Brooks an hourly wage, plus a $50 per diem
to cover expenses. The crux of the dispute was whether the $50 per diem was for travel
reimbursement. The evidence showed that, prior to hiring Brooks, Patterson reimbursed its drillers
for mileage traveled to and from work. Patterson stopped its practice of mileage reimbursement in
favor of a $50 per day payment to each of its employees. Patterson's witnesses testified that this
$50 payment was for "expenses." Brooks testified that he understood the $50 payment to be
"[d]riving pay, driver reimbursement." Brooks explained that his former employer Key Energy
paid him $35 as "driver reimbursement" and that when he was hired by Patterson, his hiring
supervisor, Ron Simonds, told him, "Drillers make $17.00 an hour, [and] you get $50.00 a day
driving, [to] bring your crew to the work site." Brooks also stated that he would not have taken the
job if Patterson had not agreed to pay for the expense of driving his crew.

 According to Mark Cullifer, Patterson's Vice President of Operations, "It was
the driller's [responsibility] to make sure he has a full crew." Cullifer testified that if a driller
continually showed up at the drilling site without a full crew "[h]e'd probably be replaced." Cullifer
also testified that it was general industry practice in the region where Brooks worked for the driller
to transport his crew to and from the oil rig. The evidence also showed that Patterson paid the $50
per diem only to drillers; it did not give this per diem to the driller's crew members. According to
Patterson, it was paying the $50 per diem to drillers "because it's competitive out there" and "we
were losing drillers to our competition." Cullifer testified that Patterson did not want to raise wages
because "when we raise wages, it costs us a lot of money in other ways." The evidence also showed
that Patterson made no deduction for social security or withholding taxes from the $50 per diem paid
to Brooks and the other drillers.

 Presented with these facts, the district court rendered judgment for Brooks after both
parties filed cross-motions for summary judgment. The majority correctly states that we review
the district court's grant of summary judgment de novo, see Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005), and that when both parties file motions for summary judgment,
we review the summary judgment evidence presented by both sides, determine all questions
presented and render the judgment the trial court should have rendered, see SAS Inst., Inc.
v. Breitenfeld, 167 S.W.3d 840, 841 (Tex. 2005). But, in light of the undisputed facts, the majority
misapplies this standard of review.

 The question before us is whether Brooks's injury in an automobile accident on the
way home from work occurred within the course and scope of his employment with Patterson. If
so, then it is a compensable injury, and he is entitled to receive workers' compensation benefits. See
Deatherage v. International Ins. Co., 615 S.W.2d 181, 182 (Tex. 1981) (workers' compensation
benefits recoverable only where death or injury in question occurs within course and scope
of employee's employment). If, however, the injury did not occur within the course and scope
of Brooks's employment, then he is not entitled to receive benefits. See id. The labor code defines
"course and scope of employment" to include "an activity of any kind or character that has to do with
and originates in the work, business, trade, or profession of the employer and that is performed by
an employee while engaged in or about the furtherance of the affairs or business of the employer." 
Tex. Lab. Code Ann. § 401.011(12) (West 2006). The term includes activities conducted on
the premises of the employer or at other locations. Id. Work that is directed or authorized by the
employer is within the course of employment regardless of whether the work benefits the employer's
business. Burkett v. Welborn, 42 S.W.3d 282, 287-88 (Tex. App.--Texarkana 2001, no pet.). An
injury "arises out of" employment if the injury would not have occurred if the conditions and
obligations of employment had not placed the claimant in harm's way. Tex. Workers' Comp. Ins.
Fund v. Simon, 980 S.W.2d 730, 735-36 (Tex. App.--San Antonio 1998, no pet.).

 As a general rule, an employee is not within the course and scope of his employment
when he is injured going to and coming from work. Tex. Lab. Code Ann. § 401.011(12)(A); see,
e.g., Evans v. Illinois Employers Ins., 790 S.W.2d 302, 304 (Tex. 1990); Texas Gen. Indem. Co.
v. Bottom, 365 S.W.2d 350, 353 (Tex. 1963). The rationale for this rule is that such injuries do not
arise out of a person's employment, but are suffered as a consequence of the risk to which
all traveling persons are exposed. Evans, 790 S.W.2d at 304. The supreme court has long held,
however, that the general rule is not applicable and that an employee is acting within the course and
scope of his employment when he is going to or returning from work in cases where the employer
furnishes the transportation as a part of the contract of employment. See Texas Employers Ins. Ass'n
v. Inge, 208 S.W.2d 867, 868-69 (Tex. 1948); see also Tex. Lab. Code Ann. § 401.011(12)(A)(i). 
The key issue in determining whether compensation is available for an injury incurred while
traveling to or from work under this exception is whether the employer's furnishing or paying for
the transportation was an integral part of the employment contract or merely an accommodation to
the employee. In the former case, the injury is within the course of employment and is compensable;
in the latter, it is not. See Rose v. Odiorne, 795 S.W.2d 210, 214-15 (Tex. App.--Austin 1990,
writ denied) (oil rig employee entitled to compensation if employer's transportation plan (1) was
essential for transporting employees to remote job site, (2) benefitted employer, and (3) was needed
to operate rig).

 The facts of Texas Employers Insurance Association v. Inge are remarkably similar
to the case before us. See Inge, 208 S.W.2d at 868. Inge was employed as an oil field "roughneck"
and received an hourly wage, plus a travel remittance of seven cents per mile to cover the expenses
of operating his automobile. Id. Under this arrangement, Inge went to work and used his own
vehicle to transport himself and his fellow workers to and from the well site. Id. Inge received no
wages for the time consumed traveling to and from work, and his employer made no deductions from
the mileage reimbursement for social security or withholding taxes. Id. After completing his regular
work shift at the well site, Inge started driving to his home in his own automobile, accompanied
by two other members of his drilling crew. Id. While driving home, Inge's car collided with another
vehicle, and Inge died as a result of the injuries he suffered. Id.

 On these facts, the supreme court held as a matter of law that Inge was acting within
the course and scope of his employment because his employer furnished the transportation as part
of Inge's contract of employment. Id. at 869. The court explained that the location of the drilling
site in an uninhabited area made it essential that Inge's employer furnish transportation in order to
induce his employees to work on the job. Id. The hallmark of the arrangement between Inge and
his employer was that the members of the drilling crew were being transported to the well site free
of cost to them. Id. The court concluded that this transportation was an important part of their
contract of employment and that the employer's affairs and business were being furthered by the
transportation of crew members to and from the well site in Inge's automobile. Id.

 The undisputed facts are no different here. The evidence showed that the drilling
site was located in a remote area near Garden City that made it essential for Patterson to furnish
transportation to its employees in order to induce them to work on this job. The substance of
Brooks's employment arrangement required him to transport his crew to and from the drilling site
or face the possibility of being replaced himself. The $50 per diem paid by Patterson to Brooks was
to cover his expenses. Brooks testified that his previous employer paid $35 per day in "drivers' pay"
and that he would not have taken the job with Patterson without receiving similar reimbursement. 
This testimony was undisputed, and Patterson admitted that it was required to pay the $50 per diem
to remain competitive with other industry employers. Without the $50 per diem, Cullifer testified
that Patterson would lose drillers to the competition. Regardless of the name used by Patterson to
refer to the $50 per diem, Patterson's own witness, Ronald Simonds, averred that he "may have" told
Brooks that it was "drivers' pay." Like the employer in Inge, Patterson did not deduct taxes from
the $50 per diem it paid to Brooks. The undisputed evidence further showed that, like Inge, Brooks
was not in the business of carrying passengers for hire and that transporting himself and his crew
members to and from the drilling site was merely part of his job as a driller working for Patterson. 
Because the undisputed evidence showed that Patterson paid the $50 per diem to transport Brooks
and his crew members to the drilling site, I would affirm the trial court's judgment that Brooks was
acting within the course and scope of his employment when he was injured.

 In addition, I observe that another exception to the "coming and going" rule is
likewise applicable to the undisputed facts in this case. Subsection 401.011(12)(A) of the labor code
also excepts from the general rule transportation to and from the place of employment where the
employer directs the employee in his employment to proceed from one place to another place. See
Tex. Lab. Code Ann. § 401.011(12)(A)(iii).

 In Janak v. Texas Employers Insurance Association, the supreme court considered
whether an employer's direction "to proceed from one place to another" must be express. 
381 S.W.2d 176, 181 (Tex. 1964). Relying on Jecker v. Western Alliance Insurance Company,
369 S.W.2d 776 (Tex. 1963), the supreme court held that the employer's direction can be implied,
but the implied direction must be within the employment and the travel must be in furtherance of the
business of the employer. See Janak, 381 S.W.2d at 181.

 The undisputed evidence in this case satisfies the exception as interpreted by the
supreme court in Janak. Brooks testified that, on the day before the accident, Patterson called him
and told him to return to work the next day because the rig had been moved and would be running
again. This testimony was undisputed. The evidence was likewise undisputed that the drilling
sites were located in remote areas; that Patterson moved the oil rig from one drilling site to the
next, sometimes as frequently as every five or six days; and that Patterson required Brooks to
transport his crew members to and from the drilling site or face the risk of being "replaced." As in
Janak, benefits flowed to Patterson from the arrangement or plan of paying a $50 per diem to Brooks
and making it Brooks's duty to get the crew to the job site. See id. at 181-82; see also Liberty Mut.
Ins. Co. v. Chestnut, 539 S.W.2d 924, 928 (Tex. App.--El Paso 1976, writ ref'd n.r.e.). From this
evidence, the trial court could have properly found that Patterson "directed [Brooks] . . . to proceed
from one place to another place" within the meaning of section 401.011(A)(12)(iii) and that Brooks
was therefore acting within the course and scope of his employment. See Janak, 381 S.W.2d at 181.

 Because the majority misapplies the standard of review and creates a fact issue where
none exists, I respectfully dissent.



 __________________________________________

 Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Filed: August 8, 2008

1. I concur in the majority's conclusion that the summary judgment was not void under
section 410.258 of the labor code.