Novilene DEATHERAGE, Petitioner,

v.

INTERNATIONAL INSURANCE
COMPANY, Respondent.

No. B–9941.

Supreme Court of Texas.

March 25, 1981.

Rehearing Denied April 29, 1981.

Don R. Wilson, Jr. and Randy Wilson, Abilene, Little & Palmer, Richard Palmer, Big Spring, for petitioner.

Naman, Howell, Smith, Lee & Muldrow, Jerry P. Campbell and Beverly Willis, Waco, for respondent.

BARROW, Justice.

The question presented here is whether there is evidence to support the jury finding that the deceased worker died as a result of injuries received in the course of his employment.[1] The trial court rendered judgment on the jury verdict whereby petitioner Novilene Deatherage, the surviving widow of Tom Deatherage, recovered death benefits under the Workers' Compensation Act, Article 8306, § 8.[2] The court of civil appeals, with one justice dissenting, concluded that there was no evidence to support the finding that Deatherage died in the course of employment and reversed the trial court judgment and rendered judgment that Novilene Deatherage take nothing. 606 S.W.2d 548. We reverse the judgment of the court of civil appeals and remand the cause to that court for disposition of respondent's factual insufficiency point.

■ It is essential that an injury be sustained in the course of employment so as to entitle the employee or his statutory beneficiaries to recover workers' compensation

---

1. It is fundamental that in determining a "no evidence" point of error we must review the record in its most favorable light in support of the jury finding, considering only the evidence and inferences which support the finding, and rejecting the evidence and inferences contrary to the finding. *Sagebrush Sales Co. v. Strauss,* 605 S.W.2d 857 (Tex.1980).

2. All statutory references are to Texas Revised Civil Statutes Annotated.

benefits. Article 8306, § 1. As a general rule, a claimant must meet two requirements: (1) the injury must have occurred while the employee was engaged in or about the furtherance of the employer's affairs or business; and (2) the claimant must show that the injury was of a kind and character that had to do with and originated in the employer's work, trade, business or profession. Article 8309, § 1(4); *Biggs v. United States Fire Insurance Co.*, 611 S.W.2d 624 (Tex.1981); *Texas Employers Ins. Ass'n v. Page*, 553 S.W.2d 98 (Tex. 1977); *Shelton v. Standard Insurance Co.*, 389 S.W.2d 290 (Tex.1965); *Texas General Indemnity Co. v. Bottom*, 365 S.W.2d 350 (Tex.1963).

■ Tom Deatherage was employed as a truck driver for Jagoe-Public Company, a road contractor, in connection with a road construction project Jagoe-Public was performing in Bell County. After completion of the road work in late summer of 1977, Jagoe-Public traded the asphalt mixing plant it had used on this project to Plains Machinery Company. As a part of the trade, Jagoe-Public agreed to furnish an employee to watch over the plant until Plains Machinery sold it. Deatherage was assigned to this task by Jagoe-Public. International Insurance Company carried workers' compensation insurance on the Jagoe-Public employees, including Deatherage.

The asphalt plant was located in the bottom of an abandoned rock quarry on a remote four or five acre tract located a few miles from the little town of Nolanville in Bell County. Deatherage, who had performed similar security duty for Jagoe-Public on a prior job, lived in a small camper trailer owned by him which was parked on the premises of the asphalt plant. Mrs. Deatherage, who was employed as a cook for a school cafeteria, lived at their home near Hamby, Texas. Deatherage had no telephone on the premises, but usually called his wife every two or three weeks.

There is no testimony that Deatherage was required to live in his trailer house on the premises, but his employer knew that he would do so because of the prior security job he had performed. Deatherage was the only person regularly on the premises. He had no specific duties to perform and was not required to be at any particular place on the premises when he was on duty. He was instructed to watch the plant during the hours of darkness.

Although Deatherage was free to come and go as he pleased during the daylight hours, it is a fair inference that if he was on the premises, he was required to furnish security, as well as other duties, for his employer. The president of Jagoe-Public testified:

During the daylight hours, of course, his trailer was right on the site, and even the presence of the trailer there, whether no one was there or not, it's good security.

Also, he was given a set of keys to the control panel and instructed to give them to the Plains Machinery Company representatives or to any potential purchaser that wished to inspect the plant. This duty would probably arise during the daytime. He also was required to report in by telephone to the Jagoe-Public office every Wednesday. This duty was obviously to be performed during office hours of the employer.

Because of the remoteness of the jobsite and the informality of Deatherage's duties, it was not possible to ascertain the exact time of his death or what he was doing at that time. The time of his death was found by the jury to be February 15, 1978. This date of death, which was recognized by his employer in a letter to Mrs. Deatherage, was based on circumstantial evidence. A salesman for Plains Machinery Company inspected the asphalt plant on March 9 and reported to Jagoe-Public that he had not seen the caretaker on the premises. Inquiry at the Jagoe-Public office revealed that no one could recall Deatherage reporting in for several weeks. A call was made to the Bell County Sheriff's department and an investigator was sent to the premises. He discovered a skull and a few small bones amid the burned remnants of the trailer in the area where a bed appeared to have been

located in the small trailer. Deatherage purchased butane for the trailer with a check dated February 14, and there is no evidence that he was alive after that date. He was paid weekly by a check mailed from his employer's office to the post office in Harker Heights. It was learned after his remains were discovered that he had not picked up the pay check mailed to him by Jagoe-Public on February 15, nor had he picked up the checks mailed weekly thereafter.

The subsequent investigation revealed that the dispatcher at the sheriff's office had received a report by C–B radio from an unidentified motorist of a suspected brush fire in the vicinity of the rock quarry about 8:00 p. m. on February 15. The dispatcher reported this fire to the Nolanville Fire Department, but the firemen who responded were unable to locate the fire.

The rule to be applied in the case of an "unexplained death" such as we have here was stated in *Scott v. Millers Mutual Fire Insurance Co. of Texas*, 524 S.W.2d 285 (Tex.1974), as follows:

> When an employee is found dead at a place where his duties require him to be, or where he might properly have been in the performance of his duties, during the hours of his work, it has been said that in the absence of evidence that he was not engaged in his master's business, there is presumption that the accident arose out of and in the course of the employment within the meaning of the compensation statute.

Here, as in *Scott*, Mrs. Deatherage has no need for this presumption because she obtained a jury finding that Deatherage was injured in the course and scope of his employment. Nevertheless, we must determine whether there is more than a scintilla of evidence to support the jury finding.

The evidence establishes that Deatherage was found dead at a place where his duties required him to be or where he might properly have been in the performance of his duties. However, the court of civil appeals concluded that Mrs. Deatherage could not recover because she failed to prove that Deatherage died "during the hours of his work." This conclusion erroneously restricts Deatherage's employment to specific duties and fixed hours of work. As heretofore pointed out, the nature of his duties and the remote place of their performance made his duties and hours of employment very broad. It is true that he was paid on the basis of ten hours a day, seven days a week. However, as heretofore pointed out, the jury could reasonably infer that he was performing security duty for his employer at all times that he was on the premises. Clearly, his presence on the premises served this purpose for his employer.

In a case with very similar facts, the Supreme Court of Nebraska affirmed the trial court's award of workmens' compensation benefits for injuries received by a caretaker when his on-premises living quarters burned. Although the employee was not required to live on the premises, the court held the employer derived a benefit from the employee's presence which was reasonably incident to his duties as a caretaker and laborer. *Bourn v. James*, 191 Neb. 635, 216 N.W.2d 739 (Neb.1947).[3] *See also*: Larson's Workmen's Compensation Law §§ 10.-32, 24.10 and 24.32 (1979).

We conclude from the facts in this cause that there is more than a scintilla of evidence to support the jury finding that Deatherage died as a result of injuries received in the course of his employment. Therefore, the holding of the court of civil appeals that there was no evidence to support the jury finding was erroneous. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex.1974). The court of civil appeals did not consider respondent's point of error complaining that the evidence is factually insufficient to support the jury finding regarding course of employment. Inasmuch as this factual insufficiency point is within the exclusive jurisdiction of the courts of

**3.** The definition of "course of employment" under Nebraska law is similar to the Texas definition. *See*: § 48–151(6), Neb.Rev.Stat.

civil appeals, we remand the cause to that court for determination of that point. *Custom Leasing, Inc. v. Texas Bank & Tr. Co. of Dallas,* 491 S.W.2d 869 (Tex.1973).

The judgment of the court of civil appeals is reversed and the cause is remanded to that court for further proceedings not inconsistent with this opinion.