TEXAS PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION FOR PETROSURANCE CASUALTY COMPANY, Impaired Insurer, Appellant,

v.

Randy BROOKS, Appellee.

No. 03–06–00312–CV.

Court of Appeals of Texas, Austin.

Aug. 8, 2008.

Rehearing Overruled Nov. 19, 2008.

David L. Swanson, Stone Loughlin & Swanson, L.L.P., Austin, for appellant.

Scott A. Stewart, Horsley & Stewart, Dallas, for appellee.

Before Justices PATTERSON, PEMBERTON and WALDROP.

## OPINION

G. ALAN WALDROP, Justice.

Appellee Randy Brooks was injured in an automobile accident while driving home from his job as a driller on an oil rig. After the Texas Department of Insurance Workers' Compensation Division determined that Brooks's injury was not compensable because he was not "in the course and scope of employment" at the time of his injury, Brooks brought suit against appellant Texas Property and Casualty Insurance Guaranty Association ("TPCIGA") for workers' compensation benefits in the district court. *See* Tex. Lab.Code Ann. § 406.031 (West 2006). After considering cross motions for summary judgment, the district court found that Brooks was in the course and scope of employment at the time of his injury and granted summary judgment in his favor.

On appeal, TPCIGA contends that (1) the summary judgment granted in favor of Brooks is void and must be set aside due to Brooks's failure to file a proposed judgment with the Division pursuant to section 410.258 of the labor code before the trial court entered its summary judgment; and (2) the trial court erred by granting summary judgment in favor of Brooks because Brooks was not in the course and scope of employment at the time of his injury as a matter of law or, alternatively, that a material question of fact exists with respect to that issue.

We conclude that the trial court's summary judgment is not void. However, we find that a genuine issue of material fact exists with respect to whether Brooks was in the course and scope of employment at the time of his injury. Accordingly, we reverse the summary judgment and remand this cause to the trial court.

### Factual and Procedural Background

Brooks worked for Patterson Drilling Company as a driller on various oil rigs. From time to time, the location of Brooks's job site would change depending on production levels of various rigs. At the time of the accident, Brooks worked the night shift on "Rig 17" near Garden City with three other Patterson employees serving as his crew. Brooks and his crew members lived in Odessa, and Brooks transported his crew between Odessa and Rig

17 in his personal truck.[1]

Brooks and his crew were paid an hourly wage for the time they spent working at the rig site. They were not paid an hourly wage for the time spent traveling to and from the rig site. In addition to the hourly wage, Patterson paid Brooks a fixed daily amount of $50. His crew members did not receive this additional pay.

On February 21, 2001, Brooks was injured in an automobile accident while returning to Odessa from Rig 17. He was transporting his crew members at the time of the accident. Petrosurance Casualty Company, the workers' compensation carrier for Patterson, denied Brooks's claim for compensation on the basis that he was not "in the course and scope of employment" at the time of the accident as required by the Texas Workers' Compensation Act. *See* Tex. Lab.Code Ann. § 406.031. Brooks then submitted the dispute to the Texas Department of Insurance Workers' Compensation Division. The Division held a contested case hearing and determined that Brooks did not have a compensable claim. An appeals panel of the Division affirmed.

Brooks sought judicial review of the agency decision. While the district court action was pending, Petrosurance was declared an impaired insurer and TPCIGA became the real party in interest. *See* Tex. Ins.Code Ann. § 462.004(5) (West 2008) (defining "impaired insurer"). TPCIGA and Brooks filed cross motions for summary judgment. The central issue presented by their motions was whether the $50 per diem received by Brooks was compensation for transporting his crew to and from work such that his injury occurred in the course and scope of employment. The trial court found that "no gen-

uine issues of material fact exist as to whether [Brooks] was within the course and scope of his employment" and granted summary judgment in favor of Brooks.

**Section 410.258**

■ In its first issue, TPCIGA contends that the summary judgment granted in favor of Brooks is void and must be set aside due to Brooks's failure to file a proposed judgment with the Division before the trial court entered its summary judgment. Section 410.258 of the labor code, entitled "Notification of Division of Proposed Judgments and Settlements; Right to Intervene," provides in relevant part:

(a) The party who initiated a proceeding under this subchapter or Subchapter G must file any proposed judgment or settlement made by the parties to the proceeding, including a proposed default judgment, with the division not later than the 30th day before the date on which the court is scheduled to enter the judgment or approve the settlement. The proposed judgment or settlement must be mailed to the division by certified mail, return receipt requested.

. . . .

(f) A judgment entered or settlement approved without complying with the requirements of this section is void.

Tex. Lab.Code Ann. § 410.258 (West 2006).

The dispute on this point concerns the type of judgment that must be submitted to the Division for approval under section 410.258. TPCIGA contends that the statute requires that all judgments must be submitted to the Division to be valid. Brooks argues that the statute does not

---

**1.** Brooks testified at the contested case hearing that the distance from Odessa to Rig 17 near Garden City was 52 miles.

apply to judgments prepared by the trial court. These competing views arise from different interpretations of what the phrase "made by the parties" in subsection (a) modifies—"settlement" or "proposed judgment or settlement." *See id.* § 410.258(a). TPCIGA argues that "made by the parties" modifies only the term "settlement." Under this theory, the party who initiated the proceeding must file with the Division any settlement "made by the parties" and any proposed judgment whether "made by the parties" or not. Brooks argues that "made by the parties" modifies both "settlement" and "proposed judgment." Under his theory, the party who initiated the proceeding must file with the Division any proposed judgment "made by the parties" and any settlement "made by the parties." This reading would require the submission only of judgments "made" or proposed to the court by the parties, such as proposed judgments that have been agreed to by the parties. It would exclude from the submission requirement all other judgments such as those entered by the court without the agreement of the parties.

Both parties contend that subsection (f) supports their view. Subsection (f) provides that "a judgment" entered without complying with the requirements of the statute is void. *Id.* § 410.258(f). TPCIGA contends that because "a judgment" does not distinguish between proposed judgments "made by the parties" and judgments entered by the trial court that have not been submitted by the parties by agreement, the legislature intended for the statute to apply to any judgments regardless of whether they are the result of agreement or the adversarial process. Brooks responds that, when reading the statute as a whole, the reference to "a judgment" in subsection (f) is limited by subsection (a) of the statute. He contends that the general language of subsection (f)

cannot apply to a broader range of judgments than those contemplated by subsection (a), which—according to Brooks—applies only to proposed judgments "made by the parties."

Our primary objective in statutory construction is to give effect to the legislature's intent. *State v. Shumake,* 199 S.W.3d 279, 284 (Tex.2006). In deriving the legislature's intent, we rely on the plain meaning of the statutory text, unless a different meaning is supplied by legislative definition or is apparent from context, or such construction leads to absurd results. *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625–26 (Tex.2008) (citing *Texas Dep't of Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 642 (Tex.2004)), *Taylor v. Firemen's & Policemen's Civil Serv. Comm'n of City of Lubbock,* 616 S.W.2d 187, 189 (Tex.1981); *University of Tex. Sw. Med. Ctr. v. Loutzenhiser,* 140 S.W.3d 351, 356 (Tex.2004); *see Jones v. Fowler,* 969 S.W.2d 429, 432 (Tex.1998) (we consider statutory language in context, not isolation). Our analysis of the statutory text is also informed by the presumptions that "the entire statute is intended to be effective" and that "a just and reasonable result is intended," Tex. Gov't Code Ann. § 311.021(2), (3) (West 2005), as well as consideration of the "object sought to be attained" by the statute and the "consequences of a particular construction," *Id.* § 311.023(1), (5) (West 2005).

The practical implications of both parties' interpretations persuade us that the legislature did not intend that the statute apply to judgments entered by the trial court that were not submitted or proposed to the court by agreement of the parties or the result of a default by the defendant. The statute was intended to prevent the parties from colluding to overturn appeals

panel decisions.[2] It accomplishes this purpose by requiring submission of judgments "made" by the parties—i.e. judgments proposed to the court by agreement of the parties rather than judgments entered as a result of adversarial proceedings. If, however, the statute were to apply to any judgment, a strict reading of the statute would require a trial court to figure out a way to get the party who initiated the action to submit the judgment the court is preparing to enter to the Division for approval thirty days in advance of entry in every case.[3] This would be true regardless of whether the judgment is the result of noncollusive, adversarial proceedings or the result of an agreement between the parties. If this were the procedure, a party who initiated an action for judicial review of an agency decision could avoid or delay entry of an adverse judgment by refusing, delaying, or otherwise failing to submit the judgment to the Division. In addition, judgments entered after a failure to appear by the plaintiff or after a failure to prosecute or on the court's motion on jurisdictional grounds would have to be submitted to the Division before entry even if "the party who initiated the proceeding" is not available or is not interested in making the submission. Section 410.258 does not address these types of situations, where the entry of judgment may be appropriate but the judgment has not been proposed or "made" by the parties. Nor does the statute provide a procedure for addressing such situations or specify who is responsible for making the submission to the Division if the "party who initiated the proceeding" is not avail-

able or no longer actively involved in the litigation.

We are of the view that the statute does not address such situations because it was not designed to address them. It was designed to address judgments prepared and proposed by the parties—i.e. "made by the parties"—to avoid collusion between them without the Division's knowledge. Such collusion could distort the litigation process. If the parties are not proposing a judgment or settlement by agreement, the litigation process is running its course without threat of collusion or distortion. The statute's placing the burden of submitting a proposed judgment on the party who initiated the proceeding makes sense in the context of an agreed proposed judgment that the party has an interest in seeing entered. This burden does not make sense in the context of a judgment entered after fully adversarial proceedings or proceedings in which the party who initiated the proceeding has failed to appear or failed to prosecute.

■ We conclude that section 410.258 does not require the Division to receive advance notice of every judgment in a proceeding initiated under subchapter F or G of the labor code. Instead, we are of the opinion that the statute requires the Division to receive notice of proposed judgments "made by the parties"—i.e. without judicial oversight or without fully adversarial proceedings—and settlement agreements made by the parties. This interpretation ensures that the trial court

---

**2.** We observe that the bill analysis for section 410.258 of the labor code provides that the statute "prevents the use of settlement agreements, and judgments based on default or on an agreement of the parties, to overturn Appeals Panel decisions." *See* House Comm. on Bus. & Indus., Bill Analysis, Tex. H.B. 3137, 75th Leg., R.S. (1997).

**3.** The statute requires that the party who *initiated* the action—not the court or the defendant—timely and correctly file the proposed judgment with the Division. Tex. Lab.Code Ann. § 410.258(a) (West 2006).

does not sign off on a proposed judgment made or agreed to by the parties before the Division has been notified and given an opportunity to intervene. Additionally, this interpretation does not place impractical procedural burdens on the trial court or permit a party who initiated the proceeding to avoid or delay entry of an adverse judgment by refusing to submit the judgment to the Division. This interpretation also gives meaning to the phrase "made by the parties" that is consistent with the purpose of the statute.

We recognize that our holding in this case is inconsistent with the El Paso Court of Appeals' opinion in *Insurance Co. of the State of Pennsylvania v. Martinez*, 18 S.W.3d 844 (Tex.App.-El Paso 2000, no pet.). In *Martinez*, the court held that a summary judgment prepared by the trial court was void because the Division did not receive notification pursuant to section 410.258. *Id.* at 848. It specifically stated that "[b]efore the trial court entered summary judgment, no notification was filed with the commission as mandated by Section 410.258. The trial court was, therefore, without jurisdiction to render judgment, and it is void." *Id.* For the reasons discussed above, we respectfully disagree with the interpretation of section 410.258 in *Martinez*.

Our holding does not, however, conflict with the Houston court of appeals' opinion in *Metropolitan Transit Authority v. Jackson*, 212 S.W.3d 797 (Tex.App.-Houston [1st Dist.] 2006, pet. denied). That case was tried to a jury and a verdict was rendered. The parties engaged in post-verdict negotiations before a judgment was entered. As a result of those negotiations, the parties agreed to a judgment awarding Jackson supplemental benefits and attorneys' fees. *Id.* at 799. The trial court signed a judgment reflecting the parties' agreement. *Id.* On appeal, it was undis-

puted that Jackson did not submit the proposed judgment to the Division pursuant to section 410.258. *Id.* at 800. Accordingly, the Houston court of appeals held that the trial court's judgment was void due to noncompliance with the statute. *Id.* at 801. This was a situation where the parties agreed upon a result and submitted a proposed judgment to the trial court for approval. It was a judgment made and proposed by the parties. The fact that it was proposed post-verdict does not affect the analysis. We agree that, under the circumstances presented in the *Jackson* case, noncompliance with section 410.258 renders the judgment void.

In this case, however, there is no evidence in the record that the trial court based its summary judgment on any kind of agreement or resolution of the case made or proposed by the parties. There was no proposed judgment "made by the parties" that Brooks could have filed with the Division. The trial court prepared and entered a judgment based on its evaluation of the merits of the case and the cross motions for summary judgment filed by the parties. The judgment was entered after fully adversarial proceedings and without threat of collusion between the parties that could potentially distort the result. Such a judgment is not "made by the parties" as contemplated by section 410.258. We hold that the summary judgment granted in favor of Brooks is not void.

**Summary Judgment**

In its second issue, TPCIGA contends that the trial court erred by granting summary judgment in favor of Brooks because Brooks was not acting in the course and scope of employment at the time of his injury as a matter of law or, alternatively, that a genuine issue of material fact exists with respect to that issue.

We review the summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex.2004). The standards for reviewing a summary judgment are well established: (1) the movant must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether a disputed issue of material fact exists that would preclude summary judgment, we take all evidence favorable to the non-movant as true; and (3) we indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). When, as here, both parties file motions for summary judgment and the court denies one and grants the other, we must review the summary-judgment evidence presented by both sides, decide all questions presented, and render the judgment that the trial court should have rendered. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex.2000).

Under the Workers' Compensation Act, an insurance carrier is liable for compensation for an employee's injury if the injury arises out of and in the course and scope of employment. Tex. Lab.Code Ann. § 406.031. The primary test for determining whether an employee is acting within the course and scope of employment is whether the employer has the right to direct and control the employee's performance at the time of the act. *Arbelaez v. Just Brakes Corp.*, 149 S.W.3d 717, 720 (Tex.App.-Austin 2004, no pet.) (citing *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex.2002)). Generally, an employee is not in the course and scope of his employment while driving his own vehicle to and from his place of work. *Soto v. Seven Seventeen HBE Corp.*, 52 S.W.3d 201, 205 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Upton v. Gensco, Inc.*, 962 S.W.2d 620, 621 (Tex.

App.-Fort Worth 1997, pet. denied). However, the term "course and scope of employment" may include transportation to and from the place of employment when the transportation is furnished as a part of the contract of employment or is paid for by the employer. Tex. Lab.Code Ann. § 401.011(12) (West Supp.2008).

In this case, the parties dispute whether the additional $50 Brooks received on a daily basis was payment for transportation that would place his drive to and from oil rig sites within the "course and scope of employment." Some of the evidence in the record suggests that Patterson paid Brooks $50 per day to transport his crew to and from work. Brooks testified at the contested case hearing that the $50 daily payment was "regularly referred to as driving pay on the rig" and "[t]hat 50 dollars a day is so you'll show up with a full crew." Additionally, the "Drilling Rig Safety Orientation" manual provided by Patterson to Brooks and admitted into evidence stated: "[t]he [d]riller on each tour is directly responsible to insure that his personnel arrive at the worksite prepared to work." The record also contains the affidavit of Ron Simonds, a tool pusher at Patterson who hired Brooks to work on a rig in Fort Stockton, which stated:

> Patterson referred to the additional $50.00 payment as "per diem" pay. However, at the time, more than five years after Mr. Brooks' hire, I do not specifically recall if I referred to this additional amount as "per diem" when I hired Mr. Brooks. I may have referred to it as "driving pay" because that was a term frequently used by workers in the field.

On the other hand, the record also contains evidence suggesting that Patterson did not pay Brooks $50 per day to transport his crew to and from the rig site. When asked at the contested case hearing

whether "anybody at Patterson ever in-struct[ed] you or t[old] you that you had to carry crew," Brooks responded "no." Additionally, Mark Cullifer, vice president of operations at Patterson, testified that Patterson paid every driller $50 regardless of whether that driller drove himself to the rig, transported members of his crew to the rig, or even walked to the rig. He explained the reason for the $50 daily payment as follows: "[w]e were losing drillers to our competition, and Mr. Patterson thought [the drillers] were making as much as they should make hourly. And to be honest with you we—when we raise wages it costs us a lot of money in other ways, so expense was the way that they raised their wages." Lastly, Simonds stated in his affidavit, "I did not tell Mr. Brooks that the additional $50 per day was for transporting Patterson's employees, or his crew, to the rig. I also did not tell Mr. Brooks that the payment was to reimburse him for the expense of operating his vehicle."

On this record, we conclude that a fact issue exists with respect to whether the $50 daily payment provided to Brooks was compensation for transporting his crew to and from work and, therefore, transportation furnished or paid for by the employer, or some other type of additional compensation. We reverse the summary judgment and remand this cause for further proceedings consistent with this opinion.

Concurring and Dissenting Opinion by Justice PATTERSON.

JAN P. PATTERSON, Justice, concurring and dissenting.

In this workers' compensation case, the majority misapplies the standard of review

and creates a fact issue where none exists. The undisputed facts show that appellee Randy Brooks was paid $50 per day by his employer, Patterson Drilling Company, to transport his drilling crew to and from work, thereby excepting his travel home from the "coming and going" rule and rendering his injury in an automobile accident compensable under the statute. *See* Tex. Lab.Code Ann. § 401.011(12)(A) (West 2006). Because the majority concludes otherwise, I respectfully dissent.[1]

Patterson employed Brooks as an oil rig driller, and he was injured in an automobile accident while transporting himself and his crew from the well site, located in a remote area near Garden City, to their homes in Odessa, fifty-two miles away. Brooks testified that he and his crew generally worked seven days a week from 11:00 p.m. to 7:00 a.m. and that he would only get a day off when the well was finished and Patterson would move the oil rig from one drilling site to another, sometimes as frequently as every five or six days. Brooks testified that, once Patterson moved the oil rig to a new drilling site, he would have to drive himself and his crew members to the new location. According to Brooks, he would pick up his crew members in Odessa each evening and transport them to the drilling site for work and then transport them home afterwards. Brooks further testified that, on the day before the accident, Patterson called him and instructed him to return to work after two days off because the rig had been moved and would be running again the next day.

The evidence showed that Patterson paid Brooks an hourly wage, plus a $50 per diem to cover expenses. The crux of the dispute was whether the $50 per diem

---

1. I concur in the majority's conclusion that the summary judgment was not void under section 410.258 of the labor code.

was for travel reimbursement. The evidence showed that, prior to hiring Brooks, Patterson reimbursed its drillers for mileage traveled to and from work. Patterson stopped its practice of mileage reimbursement in favor of a $50 per day payment to each of its employees. Patterson's witnesses testified that this $50 payment was for "expenses." Brooks testified that he understood the $50 payment to be "[d]riving pay, driver reimbursement." Brooks explained that his former employer Key Energy paid him $35 as "driver reimbursement" and that when he was hired by Patterson, his hiring supervisor, Ron Simonds, told him, "Drillers make $17.00 an hour, [and] you get $50.00 a day driving, [to] bring your crew to the work site." Brooks also stated that he would not have taken the job if Patterson had not agreed to pay for the expense of driving his crew.

According to Mark Cullifer, Patterson's Vice President of Operations, "It was the driller's [responsibility] to make sure he has a full crew." Cullifer testified that if a driller continually showed up at the drilling site without a full crew "[h]e'd probably be replaced." Cullifer also testified that it was general industry practice in the region where Brooks worked for the driller to transport his crew to and from the oil rig. The evidence also showed that Patterson paid the $50 per diem only to drillers; it did not give this per diem to the driller's crew members. According to Patterson, it was paying the $50 per diem to drillers "because it's competitive out there" and "we were losing drillers to our competition." Cullifer testified that Patterson did not want to raise wages because "when we raise wages, it costs us a lot of money in other ways." The evidence also showed that Patterson made no deduction for social security or withholding taxes from the $50 per diem paid to Brooks and the other drillers.

Presented with these facts, the *district* court rendered judgment for Brooks after both parties filed cross-motions for summary judgment. The majority correctly states that we review the district court's grant of summary judgment de novo, *see Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005), and that when both parties file motions for summary judgment, we review the summary judgment evidence presented by both sides, determine all questions presented and render the judgment the trial court should have rendered, *see SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex.2005). But, in light of the undisputed facts, the majority misapplies this standard of review.

The question before us is whether Brooks's injury in an automobile accident on the way home from work occurred within the course and scope of his employment with Patterson. If so, then it is a compensable injury, and he is entitled to receive workers' compensation benefits. *See Deatherage v. International Ins. Co.*, 615 S.W.2d 181, 182 (Tex.1981) (workers' compensation benefits recoverable only where death or injury in question occurs within course and scope of employee's employment). If, however, the injury did not occur within the course and scope of Brooks's employment, then he is not entitled to receive benefits. *See id.* The labor code defines "course and scope of employment" to include "an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer." Tex. Lab. Code Ann. § 401.011(12) (West 2006). The term includes activities conducted on the premises of the employer or at other locations. *Id.* Work that is directed or authorized by the employer is within the course

of employment regardless of whether the work benefits the employer's business. *Burkett v. Welborn*, 42 S.W.3d 282, 287–88 (Tex.App.-Texarkana 2001, no pet.). An injury "arises out of" employment if the injury would not have occurred if the conditions and obligations of employment had not placed the claimant in harm's way. *Tex. Workers' Comp. Ins. Fund v. Simon*, 980 S.W.2d 730, 735–36 (Tex.App.-San Antonio 1998, no pet.).

As a general rule, an employee is not within the course and scope of his employment when he is injured going to and coming from work. Tex. Lab.Code Ann. § 401.011(12)(A); *see, e.g., Evans v. Illinois Employers Ins.*, 790 S.W.2d 302, 304 (Tex.1990); *Texas Gen. Indem. Co. v. Bottom*, 365 S.W.2d 350, 353 (Tex.1963). The rationale for this rule is that such injuries do not arise out of a person's employment, but are suffered as a consequence of the risk to which all traveling persons are exposed. *Evans*, 790 S.W.2d at 304. The supreme court has long held, however, that the general rule is not applicable and that an employee is acting within the course and scope of his employment when he is going to or returning from work in cases where the employer furnishes the transportation as a part of the contract of employment. *See Texas Employers' Ins. Ass'n v. Inge*, 146 Tex. 347, 208 S.W.2d 867, 868–69 (1948); *see also* Tex. Lab.Code Ann. § 401.011(12)(A)(i). The key issue in determining whether compensation is available for an injury incurred while traveling to or from work under this exception is whether the employer's furnishing or paying for the transportation was an integral part of the employment contract or merely an accommodation to the employee. In the former case, the injury is within the course of employment and is compensable; in the latter, it is not. *See Rose v. Odiorne*, 795 S.W.2d 210, 214–15 (Tex.App.-Austin 1990, writ denied) (oil rig employee

entitled to compensation if employer's transportation plan (1) was essential for transporting employees to remote job site, (2) benefited employer, and (3) was needed to operate rig).

The facts of *Texas Employers' Insurance Association v. Inge* are remarkably similar to the case before us. *See Inge*, 208 S.W.2d at 868. Inge was employed as an oil field "roughneck" and received an hourly wage, plus a travel remittance of seven cents per mile to cover the expenses of operating his automobile. *Id.* Under this arrangement, Inge went to work and used his own vehicle to transport himself and his fellow workers to and from the well site. *Id.* Inge received no wages for the time consumed traveling to and from work, and his employer made no deductions from the mileage reimbursement for social security or withholding taxes. *Id.* After completing his regular work shift at the well site, Inge started driving to his home in his own automobile, accompanied by two other members of his drilling crew. *Id.* While driving home, Inge's car collided with another vehicle, and Inge died as a result of the injuries he suffered. *Id.*

On these facts, the supreme court held as a matter of law that Inge was acting within the course and scope of his employment because his employer furnished the transportation as part of Inge's contract of employment. *Id.* at 869. The court explained that the location of the drilling site in an uninhabited area made it essential that Inge's employer furnish transportation in order to induce his employees to work on the job. *Id.* The hallmark of the arrangement between Inge and his employer was that the members of the drilling crew were being transported to the well site free of cost to them. *Id.* The court concluded that this transportation was an important part of their contract of employment and that the employer's af-

fairs and business were being furthered by the transportation of crew members to and from the well site in Inge's automobile. *Id.*

The undisputed facts are no different here. The evidence showed that the drilling site was located in a remote area near Garden City that made it essential for Patterson to furnish transportation to its employees in order to induce them to work on this job. The substance of Brooks's employment arrangement required him to transport his crew to and from the drilling site or face the possibility of being replaced himself. The $50 per diem paid by Patterson to Brooks was to cover his expenses. Brooks testified that his previous employer paid $35 per day in "drivers' pay" and that he would not have taken the job with Patterson without receiving similar reimbursement. This testimony was undisputed, and Patterson admitted that it was required to pay the $50 per diem to remain competitive with other industry employers. Without the $50 per diem, Cullifer testified that Patterson would lose drillers to the competition. Regardless of the name used by Patterson to refer to the $50 per diem, Patterson's own witness, Ronald Simonds, averred that he "may have" told Brooks that it was "drivers' pay." Like the employer in *Inge*, Patterson did not deduct taxes from the $50 per diem it paid to Brooks. The undisputed evidence further showed that, like Inge, Brooks was not in the business of carrying passengers for hire and that transporting himself and his crew members to and from the drilling site was merely part of his job as a driller working for Patterson. Because the undisputed evidence showed that Patterson paid the $50 per diem to transport Brooks and his crew members to the drilling site, I would affirm the trial court's judgment that Brooks was acting within the course and scope of his employment when he was injured.

In addition, I observe that another exception to the "coming and going" rule is likewise applicable to the undisputed facts in this case. Subsection 401.011(12)(A) of the labor code also excepts from the general rule transportation to and from the place of employment where the employer directs the employee in his employment to proceed from one place to another place. *See* Tex. Lab.Code Ann. § 401.011(12)(A)(iii).

In *Janak v. Texas Employers Insurance Association,* the supreme court considered whether an employer's direction "to proceed from one place to another" must be express. 381 S.W.2d 176, 181 (Tex.1964). Relying on *Jecker v. Western Alliance Insurance Company,* 369 S.W.2d 776 (Tex. 1963), the supreme court held that the employer's direction can be implied, but the implied direction must be within the employment and the travel must be in furtherance of the business of the employer. *See Janak,* 381 S.W.2d at 181.

The undisputed evidence in this case satisfies the exception as interpreted by the supreme court in *Janak.* Brooks testified that, on the day before the accident, Patterson called him and told him to return to work the next day because the rig had been moved and would be running again. This testimony was undisputed. The evidence was likewise undisputed that the drilling sites were located in remote areas; that Patterson moved the oil rig from one drilling site to the next, sometimes as frequently as every five or six days; and that Patterson required Brooks to transport his crew members to and from the drilling site or face the risk of being "replaced." As in *Janak,* benefits flowed to Patterson from the arrangement or plan of paying a $50 per diem to Brooks and making it Brooks's duty to get the crew to the job site. *See id.* at 181–82; *see*

*also Liberty Mut. Ins. Co. v. Chesnut,* 539 S.W.2d 924, 928 (Tex.App.-El Paso 1976, writ ref'd n.r.e.). From this evidence, the trial court could have properly found that Patterson "directed [Brooks] ... to proceed from one place to another place" within the meaning of section 401.011(A)(12)(iii) and that Brooks was therefore acting within the course and scope of his employment. *See Janak,* 381 S.W.2d at 181.

Because the majority misapplies the standard of review and creates a fact issue where none exists, I respectfully dissent.