# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-10-00428-CV

Texas Property and Casualty Insurance Guaranty Association for Petrosurance Casualty Company, An Impaired Insurer, Appellant

v.

Randy Brooks, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
NO. D-1-GN-03-001030, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this workers' compensation case, appellant Texas Property and Casualty Insurance Guaranty Association for Petrosurance Casualty Company, an impaired insurer, ("the Association") appeals from a trial court judgment rendered on a jury verdict that appellee Randy Brooks was acting in the course and scope of his employment when he was injured in a motor-vehicle accident. In three issues on appeal, the Association asserts that the trial court (1) erroneously excluded significant portions of testimony from its only two witnesses, (2) improperly admitted hearsay evidence or failed to give an appropriate limiting instruction, and (3) gave the jury an incomplete definition of the term "course and scope of employment." We will affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2000, Patterson Drilling Company ("Patterson") hired Brooks as an oil rig driller. An oil rig driller is a foreman on a drilling rig who supervises a crew of three workers. The initial offer of employment was made to Brooks by Ron Simonds, the tool pusher of an oil rig located in Fort Stockton, Texas. The tool pusher is the principal supervisor on a drilling rig and has the authority to hire and fire the driller and his crew. Drillers and their crews typically work 30-45 consecutive days until the well is completed.

During his tenure with Patterson, Brooks had to travel significant distances between his home in Odessa, Texas and remote work sites. There was no public transportation to the rigs on which he worked, so he drove his own personal vehicle. Brooks's crew, all of whom also lived in Odessa, rode with him to and from the work sites. Some of his crew did not have driver's licenses. Brooks was paid an hourly wage for the time he spent working at the rig site, but he was not paid an hourly wage for time spent traveling to and from the site. In addition to the hourly wage, Patterson paid Brooks $50 per day from which no income taxes were deducted. Brooks's crew members did not receive this additional pay.

On February 21, 2001, Brooks was injured in an automobile accident while driving his crew from a rig in Garden City, Texas to their homes in Odessa, which was approximately 52 miles from the rig site. He and his crew had just completed an eight-hour night shift on the rig. At the time of the accident, Brooks was driving his own pick-up truck on a public highway.

Brooks sought workers' compensation benefits. Both Patterson's workers' compensation carrier and the Texas Department of Insurance Workers' Compensation Division

2

(following a contested case hearing) denied Brooks's claim on the basis that he was not injured "in the course and scope of employment." *See* Tex. Lab. Code Ann. § 401.011(12) (West Supp. 2010) (defining "course and scope of employment"). Brooks then filed the underlying lawsuit, seeking judicial review of the agency decision. *See Texas Prop. & Cas. Ins. Guar. Ass'n v. Brooks*, 269 S.W.3d 645, 648 (Tex. App.—Austin 2008, no pet.). While the case was pending in the trial court, the Association became a party when Patterson's workers' compensation carrier was declared an "impaired insurer." *Id.* (citing Tex. Ins. Code Ann. § 462.004(5) (West 2008) (defining "impaired insurer")).

On a previous appeal to this Court, we reversed a trial court order granting summary judgment in Brooks's favor on the course and scope of employment issue, *id.* at 653, after which the case proceeded to trial before a jury. The sole issue at trial was whether Brooks was injured in the course and scope of employment. The parties stipulated that if the jury answered that question in the affirmative, Brooks had a compensable injury under the Workers Compensation Act, Tex. Lab. Code Ann. §§ 401.001-506.002 (West 2006 & Supp. 2010), from February 21, 2001 through December 20, 2001. The triable issue reduced down to whether the $50 per diem payment Patterson paid Brooks was payment for transporting his crew to and from work or instead was some other type of compensation. Generally, an employee is not in the course and scope of his employment while driving to and from work. Tex. Lab. Code Ann. § 401.011(1)(A). An exception to this general rule exists, however, if "the transportation is furnished as part of the contract of employment *or is paid for by the employer*." *Id.* § 401.011(1)(A)(i) (emphasis added). The central thesis of Brooks's case

3

was that the $50 per diem payment from Patterson qualified for this exception based on representations Simonds made in extending the employment offer to Brooks.

At trial, Brooks was permitted to testify over the Association's hearsay objections that, when he was hired, Simonds referred to the $50 per day payment as "driver's pay" and said that Brooks was responsible for ensuring that his entire crew showed up for work on time and properly prepared to perform the required work. Brooks further testified that Simonds told him that if he and his entire crew did not show up ready and able to work regularly until the well was completed, they would all be replaced. In addition, Patterson's "Drilling Rig Safety Orientation" manual, which was provided by Patterson to Brooks, was admitted into evidence and stated that "[t]he Driller on each tour is directly responsible to insure that his personnel arrive at the work site prepared to work."

Brooks also testified that he and Simonds were the only persons present when the offer of employment was made and the terms of employment were communicated, and Simonds is the only person who ever communicated with him regarding the purpose of the $50 payment. Because Simonds had the authority to hire and fire him and his crew, and based on his years of experience in the oil industry, Brooks believed Simonds had the authority to communicate the terms of the job offer. Brooks began work immediately after Simonds made the employment offer, but he testified that he would not have accepted the position if he were not compensated for driving his crew to and from the site. Moreover, Brooks averred that no other purpose for the $50 daily payment was communicated to him by Simonds, Patterson, or anyone else.

In addition to the foregoing testimony, Brooks testified that he incurred regular expenses for gas, oil changes, vehicle maintenance, wear and tear, and insurance. Furthermore, en

4

route to work each day, Brooks had to pick up ice and water for use on the rigs, and on occasion he had to pick up a tool or a part at the request of his employer. However, neither Patterson nor Simonds told Brooks that he had to drive a particular type of vehicle or utilize a particular route or drive in a particular manner, and on two occasions when the crew's presence was not required at the rig, Brooks nevertheless received the $50 per diem payment.

Neither party called Simonds as a witness. Instead, the Association sought to introduce deposition testimony from two Patterson executives—Mark Cullifer (Patterson's Vice President of Operations since the spring of 2001, after Brooks's accident) and Jody Nelson (Patterson's Chief Financial Officer since 1999)—to establish that the $50 per diem payment was not payment for the driller to drive his crew to the job site but was instead a way to provide drillers competitive compensation without increasing the hourly rate. Brooks objected to Cullifer's and Nelson's testimony on a number of grounds, including relevancy and lack of personal knowledge. *See* Tex. R. Evid. 401, 402, 602. The Association asserted, however, that their witnesses' testimony (1) rebutted Brooks's assertion that Simonds communicated that the per diem payment was for driving the crew, and (2) tended to show that the per diem was additional compensation the company paid to be competitive in hiring and retention of drillers and that Brooks was not working at the time of the accident. The Association further asserted that Cullifer and Nelson had personal knowledge of relevant facts based on their positions within the company.

Following a hearing, the trial court excluded the vast majority of Cullifer's and Nelson's testimony on the ground that it was irrelevant to the oral contract between Brooks and Simonds. The court stated:

5

[The excluded testimony] concerning what was done with other employees and in other places, perhaps at other times, maybe at the same time, all which I thought was irrelevant.

. . . .

As for the testimony of Mr. Cullifer, another co-worker or anyone else about what they were required to do, that remains irrelevant to the question of the oral contract between Mr. Brooks and the employer.

With respect to Brooks's other objections, the trial court stated:

Having looked at the other objections, I think it's correct that I wouldn't have sustained those objections . . .

. . . .

Well, the no demonstration of personal knowledge objection was – I heard that. Frankly, I was unclear on the timing on that. I am basing my ruling on the relevance objection.

The excluded testimony from Cullifer can be summarized as follows: In 2001 when he became Patterson's VP of Operations, (1) the company considered the per diem payment to be compensation and not reimbursement for driving expenses and any contrary statement by a tool pusher would have been inconsistent with Patterson's position; (2) other drillers were paid the same per diem without regard to how they traveled to the work site or how far they traveled, but the amount of the payment varied by geographic location; (3) the per diem was for expenses but he did not know what a driller's expenses might be; (4) Simonds had no authority to set the pay rates; (5) the drillers were not necessarily required to arrive at a rig with their entire crew because certain procedures were in place to get substitutes; (6) Patterson did not require drillers to have a vehicle or

6

a driver's license; (7) Patterson did not require drillers to transport their crew to the oil rig; (8) some crew members transported themselves to the work site, and there was housing for the crew at other work sites; (9) drillers were not required to turn in receipts for gas or mileage logs; (10) other employees were paid a per diem, including tool pushers, truck pushers, and certain shop people, none of whom were responsible for transporting crew members to the job site; and (11) in December 2003, Patterson changed the way the per diem was reported on its books but the drillers' job responsibilities remained the same.

The excluded testimony from Nelson can be summarized as follows: (1) Patterson uses the per diem payment as a flexible component of compensation that can be adjusted more easily than the hourly wage to address labor demands and regional needs; (2) per diem rates are not based on where a rig is located in a particular area, where the driller resides, or the price of gasoline; (3) a driller is entitled to the per diem payment even if he doesn't transport his crew, and that was the case in 2001 as well; (4) drillers were not required to submit expense documentation at the time Brooks was injured, and the per diem rate was static without regard to a driller's actual expenses; (5) Nelson had no knowledge of drillers' being instructed how or by what route to drive in 2001; (6) before December 2003, the per diem payment was treated on the payroll and Patterson's tax reports as non-taxable expense reimbursements; (7) in December 2003, following an IRS audit, Patterson began withholding income taxes from the per diem payment and paying social security taxes; (8) Nelson and Glen Patterson communicated with the IRS regarding the per diem tax issue; (9) Patterson changed its accounting treatment of the per diem payment as a result of the IRS audit and pursuant to a negotiated settlement with the IRS that avoided a charge back to employees; (10) Patterson

amended its tax filings for previous years because it lacked documentation for the expense deductions; and (11) as far as he knew, the job of a driller was the same both before and after the payroll change in December 2003.

At trial, Cullifer was permitted to testify about his current and previous positions within the company as well as the following facts: (1) the corporate office sets the pay rates for drillers and hands; (2) the tool pusher has authority to hire and fire the drillers and is the supervisor on location; (3) it was the regular practice for the driller to take all or a majority of his crew to and from the well site; and (4) he had met Simonds but did not know Brooks and was not present when the offer of employment was made. Nelson was permitted to testify only to his position within the company, job responsibilities, educational background, and that the drillers were already receiving the per diem payment when he first became employed at Patterson in 1996.

In response to a single question, the jury found that Brooks was injured in the course and scope of his employment, and the trial court rendered judgment in Brooks's favor on the jury's verdict. The trial court subsequently denied the Association's motion for new trial, and this appeal ensued.

## DISCUSSION

On appeal, the Association asserts that the trial court (1) erroneously excluded significant portions of Cullifer's and Nelson's testimony, (2) improperly admitted hearsay evidence from Simonds concerning the purpose of the $50 per diem payment or failed to give an appropriate limiting instruction, and (3) gave the jury an incomplete definition of the term "course and scope of employment." We will address these issues in reverse order, beginning with the jury charge.

8

*Jury Charge*

Section 401.011(12) of the Texas Labor Code defines "course and scope of employment" as follows:

> "Course and scope of employment" means an activity of any kind or character that has to do with and originates in the work, business, trade or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes an activity conducted on the premises of the employer or at other locations. The term does not include:
>
> (A) transportation to and from the place of employment unless:
>
>> (i) the transportation is furnished as a part of the contract of employment or is paid for by the employer;
>>
>> (ii) the means of the transportation are under the control of the employer; or
>>
>> (iii) the employee is directed in the employee's employment to proceed from one place to another place; or
>
> (B) travel by the employee in the furtherance of the affairs or business of the employer if the travel is also in furtherance of personal or private affairs of the employee unless:
>
>> (i) the travel to the place of occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be furthered by the travel; and
>>
>> (ii) the travel would not have been made had there been no affairs or business of the employer to be furthered by the travel.

Tex. Lab. Code Ann. § 401.011(12) (West Supp. 2010). Under this definition, an employee's transportation to and from work and other travel is not within the "course and scope of employment" unless (1) it has to do with or originates in the business of the employer, (2) it is performed by the

9

employee while engaged in the furtherance of the employer's affairs or business, and (3) an exception to the exclusion in subpart (A) or subpart (B) applies. The exclusion in subpart (A) of the definition is known as the "coming and going" rule, and there are three exceptions to that exclusion in subparagraphs (A)(i)-(iii). *Leordeanu v. American Prot. Ins. Co.*, 330 S.W.3d 239, 243-45 (Tex. 2010). The exclusion in subpart (B) is known as the "dual purpose" rule, and it has a single dual-pronged exception in subparagraphs (B)(i)-(ii). *Id.*

Over the Association's objection, the jury charge included only the coming-and-going rule from subpart (A). *See* Tex. Lab. Code Ann. § 401.011(12)(A)(i). The Association had requested an instruction based on the dual purpose rule, arguing that Brooks was injured while engaged in an activity of a personal nature—driving home—that would have existed even if the alleged business purpose of his travel—driving his crew home—did not exist. On appeal, the Association contends that the dual purpose rule was implicated by the evidence raised at trial and the trial court's refusal to submit the requested instruction is reversible error.

The Texas Supreme Court's opinion in *Leordeanu* is dispositive of this issue. 330 S.W.3d at 248-49. There, the supreme court held that the work-travel exclusions in subparagraphs (A) and (B) are mutually exclusive; thus, any travel between work and home, even if it is also for a dual propose, must be analyzed exclusively under subparagraph (A). *Id.* at 248-49; *see also Zurich Am. Ins. Co. v. McVey*, 339 S.W.3d 724, 729 n.2 (Tex. App.—Austin 2011, pet. filed). In the present case, it is undisputed that Brooks was traveling from work to his home when he was injured, thereby implicating only the coming and going rule in subparagraph (A). Therefore, the trial court did not abuse its discretion in denying the requested jury instruction. *See Columbia*

10

*Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855-56 (Tex. 2009) (trial court's ruling on requested jury instruction is reviewed for abuse of discretion).

### *Admission and Exclusion of Evidence*

In its remaining issues, the Association challenges the trial court's admission of Simonds's statements to Brooks and the exclusion of Cullifer's and Nelson's testimony. The admission and exclusion of evidence is a matter committed to the trial court's sound discretion. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). Although a trial court abuses its discretion when it acts unreasonably or without regard for any guiding rules or principles, we must uphold the trial court's evidentiary rulings if there is any legitimate basis in the record for the rulings. *Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.1998). Moreover, we will reverse a judgment based on an erroneous evidentiary ruling only if the error probably resulted in an improper judgment. *Id.*; Tex. R. App. P. 44.1.

The Association contends that Brooks's testimony concerning what Simonds told him about the $50 per diem payment should have been excluded as hearsay. The trial court, however, concluded that Simonds had actual or apparent authority to enter into an oral employment agreement with Brooks, and therefore the words of contract formation were words of operative fact and were not hearsay. *See Thomas C. Cook, Inc. v. Rowhanian*, 774 S.W.2d 679, 685 (Tex. App.—El Paso 1989, writ denied) ("Statements that constitute offer, acceptance or terms of a contract—so called 'operative facts'—are not hearsay; the making of such statements are in themselves relevant and thus evidence that such statements were made is not barred by the hearsay rule.") The trial court further

11

refused the Association's request for a limiting instruction to the effect that Simonds's statements could not be considered for the truth of the matter asserted, stating:

> I understand the request [for a limiting instruction]. I think that normally that limiting instruction is appropriate . . . to prevent the jury from considering hearsay for an improper purpose. In this instance, however, I think it will only confuse them and there is no risk that they will use it for any improper purpose.
>
> They are going to be asked one question. And with respect to that question, the only truth that is really at issue is the truth of what was said. And the – there is no risk that they will take it as some other truth that would lead to harmful error, would lead to an incorrect verdict. And I think just the opposite is likely if I tell them it's not offered for the truth, that it will be confusing to them.

On appeal, the Association contends that Simonds had neither actual nor apparent authority to bind Patterson to the terms of an oral contract with Brooks that included paying Brooks $50 per diem as driver's pay or requiring Brooks to drive his crew in exchange for the $50 payment. We need not consider whether Simonds had actual authority to make an oral employment contract with Brooks because there is ample support in the record for the trial court's finding that Simonds had apparent authority.

Apparent authority arises through the principal's acts of participation, knowledge, or acquiescence that "'clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise.'" *Gaines v. Kelly*, 235 S.W.3d 179, 183 (Tex. 2007) (quoting *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998)) (alteration in original). Apparent authority is based on the acts of the principal and is limited to the scope of authority that is apparently authorized. *Id*.

12

In this case, Brooks's testimony showed that Simonds's statements were within the scope of his apparent authority. Patterson held Simonds out as a person with authority to hire, fire, and communicate the terms of employment, including pay rates and employee responsibilities. There is nothing in the record to indicate that Patterson communicated the essential terms of employment to drillers other than through the tool pushers who hired them. *Cf. Hudspeth v. Chapel Hill I.S.D.*, No. 03-06-00243-CV, 2007 WL 1647818, at *3 (Tex. App.—Austin June 8, 2007, no pet.) (mem. op.) (holding that school principal lacked authority to bind school district to quoted teacher's pay where neither principal nor school board represented that principal had such authority, and in fact, expressly disclaimed such authority). In addition, there is no evidence that any contrary purpose for the $50 payment was reduced to writing or otherwise communicated to Simonds or Brooks. Under these circumstances, a reasonably prudent person using diligence and discretion could suppose that Simonds had the authority to act on behalf of Patterson in stating the terms of employment. *See Gaines*, 235 S.W.3d at 183. Moreover, Patterson's "Safety Orientation Manual" further affirmed Simonds's statements regarding Brooks's obligation to transport his crew: "The Driller on each tour is directly responsible to ensure that his personnel arrive at the work site prepared to work." Brooks's pay stub further confirmed that the $50 per diem payment was a non-taxable expense, not compensation, consistent with Simonds's representations. Therefore, Simonds's statements in connection with the offer of employment to Brooks are words of legal significance and do not constitute hearsay because the mere fact that the words were uttered is relevant to the fact to be established. *See Williams v. Jennings*, 755 S.W.2d 874, 885 (Tex. App.—Houston [14th Dist.] 1988, writ denied) ("Such testimony is received because the mere

utterance of the words has legal significance."). The trial court did not abuse its discretion in admitting Brooks's testimony concerning his communications with Simonds.

The Association next complains that, even if Simonds's statements were properly admitted, the trial court erred in failing to give a limiting instruction. The rules of evidence state: "When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, *shall* restrict the evidence to its proper scope and instruct the jury accordingly." Tex. R. Evid. 105(a) (emphasis added). Although the language in the rule is mandatory, we conclude that under the facts of this case any error in failing to give the jury the requested limiting instruction was harmless.

The alleged hearsay purpose of Simonds's statements and the non-hearsay purpose (the fact that the words were uttered) are probative of the same fact—whether Simonds agreed to pay Brooks $50 per day for transporting his crew. As discussed above, we do not believe the statements were hearsay at all. Moreover, because the non-hearsay purpose and any hearsay purpose implied from the words would tend to establish the same fact, the failure to give a limiting instruction, if error at all, was harmless. As the trial court correctly noted, the fact of the words being spoken and any truth derived from them are basically coextensive. Accordingly, under these particular facts, there was no risk that the jury would use the statements for an improper purpose. We conclude, therefore, that the failure to give a limiting instruction could not amount to harmful error. We overrule the Association's second issue.

In its first issue, the Association complains about the trial court's exclusion of Cullifer's and Nelson's testimony. Once a challenge is raised to the admissibility of evidence, the

14

proponent of the evidence carries the burden of establishing admissibility and must provide the specific purpose for which the evidence is offered and the reasons why the evidence is admissible. *See Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004) ("The proponent of hearsay has the burden of showing that the testimony fits within an exception to the general rule prohibiting the admission of hearsay evidence."); *U.S. Renal Care, Inc. v. Jaafar*, No. 04-09-00043-CV, 2011 WL 1158032, at *4 (Tex. App.—San Antonio, Mar. 30, 2011, pet. filed) ("Once an opposing party objects to proffered expert testimony, the proponent of the witnesses' testimony bears the burden to demonstrate its admissibility."); *Community Initiatives, Inc. v. Chase Bank of Tex.*, 153 S.W.3d 270, 281 (Tex. App.—El Paso 2004, no pet.) ("[T]o preserve error from a ruling that excludes evidence, the complaining party must inform the trial court of the purpose for which the evidence is offered and the reasons why the evidence is admissible."); *In re C.Q.T.M.*, 25 S.W.3d 730, 738 (Tex. App.—Waco 2000, pet denied) (holding that proponent of excluded evidence is required to specify purpose for which evidence is offered and arguments on appeal must comport with arguments asserted at trial or else they are waived).

Brooks objected to the excluded testimony on a number of grounds, including relevancy and lack of personal knowledge. Although the trial court expressly granted only the relevancy objection, we must uphold the trial court's ruling if the record supports the exclusion of evidence on any of the grounds Brooks asserted. For the reasons that follow, we conclude that the trial court could reasonably have excluded Cullifer's and Nelson's testimony based on lack of relevancy and/or personal knowledge; therefore, we need not consider Brooks's other objections to admissibility.

15

Under the Texas Rules of Evidence, "[a]ll relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority." Tex. R. Evid. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. However, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Tex. R. Evid. 602.

In response to Brooks's objections, the Association argued to the trial court that Cullifer's and Nelson's testimony (1) was relevant to Brooks's assertion that Simonds actually communicated to him that the per diem payment was for driving the crew, and (2) tended to show both that the per diem was additional compensation the company paid to be competitive in the hiring and retention of drillers and that Brooks was not working at the time of the accident. The Association further asserted that Cullifer and Nelson had personal knowledge of relevant facts based on their respective positions within the company.

The record shows that when Brooks was hired and at the time of his accident, Cullifer was Patterson's Safety Director. He did not become VP of Operations until after Brooks's accident, and he admitted that he had no knowledge of Patterson's pay rates, expense reimbursement policies, or other methods of compensation before his elevation to VP of Operations. He further admitted that he did not know Brooks, barely knew Simonds, and was not present when Simonds made the offer of employment to Brooks. He also conceded that he did not know what Simonds told Brooks, and he admitted that there was no written policy concerning the purpose for the per diem. There was no

16

evidence regarding what had been communicated to drillers, Simonds, or other tool pushers regarding the per diem at the time Brooks was hired.

The bulk of Nelson's excluded testimony related to the tax treatment of the per diem before and after December 2003. Specifically, he testified that the per diem was treated as a reimbursed business expense prior to December 2003, no taxes were deducted from the employee's paycheck based on the payment, and Patterson did not pay related social security taxes. He testified that Patterson began taxing the per diem after December 2003 following an IRS audit. As a result of the audit, Patterson had to amend prior-year returns and take a lesser deduction on the expenses because proper documentation for the expense deduction was lacking. The Association contends this testimony tends to show that the per diem had always constituted compensation; therefore, the testimony was relevant. We disagree. In a similar case, the Texas Supreme Court concluded that the tax treatment of payments for driving expenses was not material to whether a $10 "per diem" payment to a driller was payment for driving. *Texas Employers' Ins. Ass'n v. Adams*, 555 S.W.2d 867, 871 (Tex. 1948). We likewise fail to see the relevance of this testimony to the material issue in this case, which is whether Brooks engaged in employment with Patterson under the terms of an oral contract that included $50 per day to transport his crew to and from work.

With respect to the remainder of Nelson's testimony, the record shows that he did not know Brooks or Simonds, was not present when the offer of employment was made and accepted, and did not know what had been communicated to Simonds regarding the company's alleged purpose for the per diem payment. He also admitted that the company's tax treatment of the payment at the time Brooks was hired and injured was inconsistent with its being compensation. Furthermore,

17

he never worked in the oil field and had no familiarity with usual practices in the field, other than what he learned from Cullifer. In response to counsel's question regarding whether it would be reasonable for a driller to believe that he was being paid for driving, if that was in fact communicated by the tool pusher, Nelson testified: "I don't know what they [the drillers] were thinking. They're not asked for a detail of expenses, and I don't know what was communicated to them by a tool pusher or somebody else in the field." He also denied any knowledge of what a tool pusher would tell a driller when he was hired regarding the purpose of the $50 payment.

Even if the evidence the Association sought to introduce could be considered relevant to explain the "circumstances" under which Simonds made the offer of employment, as the Association alleges, it is not so plainly relevant in this case that the trial court abused its discretion in excluding the evidence. There is no evidence that anyone other than Simonds communicated with Brooks on behalf of Patterson regarding the purpose of the $50 payment. It is undisputed that there is no written policy or statement from Patterson regarding the purpose of the $50 payment. There is no evidence that Brooks was directed to seek further information about the per diem payment beyond what he was told by Simonds. Cullifer and Nelson were not present during the communications between Brooks and Simonds and have no personal knowledge regarding what was said. There is no evidence that Patterson communicated any other purpose of the payment to drillers or tool pushers, including Brooks and Simonds. Under these circumstances, the trial court did not abuse its discretion in excluding Cullifer's and Nelson's testimony.

The Association contends that the excluded evidence is necessarily relevant because our prior opinion in this case concluded that a fact issue existed "with respect to whether the

18

$50 daily payment provided to Brooks was compensation for transporting his crew to and from work and, therefore, transportation furnished or paid for the employer, or some other type of additional compensation." *Texas Prop. & Cas. Ins. Guar. Assoc. v. Brooks*, 269 S.W.3d 645, 653 (Tex. App.—Austin 2008, no pet.). The Association points out that we quoted a snippet of Cullifer's testimony and that the trial court subsequently excluded the same testimony on relevancy grounds. *See id.* However, as Brooks points out, admissibility of Cullifer's and Nelson's testimony was not at issue in that case, and no objections to their testimony had been lodged at that juncture.

The Association raises a host of other grounds for admitting Cullifer's and Nelson's testimony. However, there is no indication in the record that the Association made these arguments in the trial court. These arguments are therefore waived. *See C.Q.T.M.*, 25 S.W.3d at 738.

## CONCLUSION

Having overruled the Association's three issues on appeal, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed: August 31, 2011

19